# THE PATAPSCO ELECTRIC COMPANY *vs.* MAYOR AND CITY COUNCIL OF BALTIMORE CITY.

*Foreign Corporation Not Authorized to Use Streets of Baltimore City For Electric Light Business Without Special Grant of Franchise—Turnpike Road and Private Streets are Highways of the City—Injunction.*

A foreign corporation is not entitled to use the streets and highways of Baltimore City for conducting an electric light and power business unless it has obtained a right or franchise so to do, either from the State or from the municipality.

A foreign corporation will not be permitted to exercise any powers or conduct any occupation forbidden to domestic corporations by the laws or policy of the State.

A turnpike road partly in Baltimore City, owned by a private corporation, and streets owned by individuals but used by the

public as highways, are streets and highways of Baltimore City within the meaning of Code, Art. 23, Sec. 366, which requires electric light and power companies to obtain a grant from the Legislature and the approval of the Mayor and City Council before using the streets and highways of said city.

The municipality of Baltimore has a right to maintain a bill to enjoin a corporation from using the streets of the city for the transmission of electric light and power when the corporation has not received authority so to do.

*Decided March 24th, 1909.*

Appeal from the Circuit Court No. 2 of Baltimore City (GORTER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*George R. Willis* and *Robert Biggs,* for the appellant.

*Albert C. Ritchie,* Assistant City Solicitor (with whom was *Edgar Allan Poe* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a decree of Circuit Court No. 2 of Baltimore City, enjoining the appellant corporation from conducting an electric lighting business within the limits of Baltimore City. The decree also required the appellant to remove, from the streets and highways of the City, the poles, wires and other apparatus which had been used in connection with such business.

The bill of complaint in the case alleged that the plaintiff was a municipal corporation, having full power and control over the streets, highways, lanes and alleys within its corporate limits, and that the defendant was a corporation, created by the State of Delaware, engaged in the business of

transmitting and supplying electric power by means of wires or cables. That the defendant was never granted, by the State of Maryland or the City of Baltimore, the right to conduct its business within the limits of the City, nor had it any franchise or right to place any of its wires, cables or poles in, on or over any of the public or private streets, highways, lanes or alleys of the city.

It is further alleged that, notwithstanding the facts mentioned, the defendant wrongfully and illegally placed and is now maintaining certain of its wires, cables and poles in, on and over streets, highways, lanes and alleys, which are public highway within the limits and under the control of the city and particularly on and over certain named streets one of which, Frederick Road or Avenue, is a turnpike road, and is by means thereof distributing its electric current to its customers not only without legal authority but in direct violation of law.

The defendant answered the bill admitting most of its allegations, including the one that it had never been granted the right either by the State of Maryland or the City of Baltimore to conduct its business within the limits of the city, but denying the averment that it had no power or right to place its wires, poles or cables within the city limits, and insisting that the only public street on which its poles or wires were placed was Wilkins avenue, and that all of the other streets mentioned in the bill, including the Frederick road, were private and not public ones and that it had obtained the right to use that road for the purposes of its business from the Frederick Turnpike Company. The answer also asserted that the defendant having been incorporated under the laws of Delaware for the purpose of conducting, within the State of Maryland and City of Baltimore, the business of generating and furnishing electricity and having complied with all of the laws of this State in reference to forming corporations and having erected its poles and strung its wires on private roads and property in accordance with the regulations of the Inspector of Buildings of the city, it had

the right to conduct its business as it was doing and should not be subjected to interruption by the plaintiff in the manner attempted by the bill of complaint.

The case having been heard on bill and answer and on oral statement of facts made by counsel in open Court the learned Judge below passed a decree, in conformity with the prayer of the bill, from which this appeal was taken.

The bill only charges the defendant with conducting an electric power business, but as the Court below found as a fact that it was conducting an electric light business within the limits and upon the highways of Baltimore City, and the appeal was argued before us on that basis both orally and upon the briefs, we shall assume such to have been the fact. It was also conceded that the streets occupied by the plaintiff's poles and wires, other than Wilkins avenue and the Frederick road were private streets, and that the plaintiff did not begin its operations in the city until the year 1904.

There is practically no dispute as to the facts of the case, the questions presented by the record being legal ones. The first one is whether a foreign corporaton authorized by its charter to conduct an electric light and power business in Baltimore City can use the streets and highways of the city for that purpose without having first obtained a right or franchise to do so from either the city or the State of Maryland. The second question is whether the streets and avenues mentioned in the bill are streets or highways of the city within the meaning of the Acts of Assembly hereinafter mentioned. The third question is whether the city has the right to raise by a bill in equity the issue of the plaintiff's power to conduct its business, as it is now doing, and obtain relief by injunction.

Sec. 366 of Art. 23 of the Code of 1904, requires all corporations incorporated or to be incorporated under sec. 28 of that Article, which it is conceded includes electric light and power companies, to "obtain a special grant from the General Assembly of Maryland and also the assent and approval of the Mayor and City Council of Baltimore before

using the streets or highways of Baltimore City, either the surface or the ground beneath the same." By sec. 6 of the Baltimore City charter power is conferred on the Mayor and City Council to regulate the use of the streets and sidewalks for electric light and other wires and poles and to prohibit their erection or compel their removal, and by secs. 8, 10 and 11 the power is conferred on them to grant and to regulate the exercise of franchises in or relating to the city's highways, streets, wharves, etc. Sec. 37 prescribes the method of fixing the compensation, to be paid for the franchise, before it can be granted. These laws have been fully considered by us, in the light of the general principles of law relating to municipal government, in the cases of *Edison Co.* v. *Hooper,* 85 Md. 110, 113-114; *C. & P. Tel. Co.* v. *City,* 89 Md. 682, 722; *Purnell* v. *McLane,* 98 Md. 589 and *Brown* v. *Md. Tel. Co.,* 101 Md. 574, 580. In those cases it was determined that neither domestic corporations nor natural persons could construct or maintain their lines in the streets or highways of Baltimore City without the city's consent or a franchise therefor obtained from it.

The comity exhibited by the several American States toward each other secures to a corporation created by any one of them almost the same use of its chartered powers and privileges in the territory of the others which it enjoys in the one that created it. That comity, however is always extended to foreign corporations by the domestic State in such manner as to do no violence to its own policy or injury to its own citizens, and the foreign corporation will not be permitted to exercise any powers or conduct any occupation forbidden to a domestic corporation by the laws or policy of the State. Those limitations upon the principle of comity are not only inherently just and reasonable but they are well supported by authority. 19 *Cyc.,* 1222-5; 13 *A. & E. Encycl.,* 837-842, and cases there cited. They have recently been incorporated into the statute law of this State by section 66 of Chapter 240 of the Acts of 1908, which provides that: "No foreign corporation shall engage or continue in any kind of business in

this State, the transaction of which by domestic corporations is not permitted by the laws thereof." * * *

The application of the law thus laid down to the case before us compels us to hold that the appellant, being confessedly without any grant from the State of Maryland or the City of Baltimore of the right to conduct its business within the city, is not entitled to place or maintain any poles, wires or cables in its public streets or highways.

It is conceded by both parties that, of the streets of the city occupied by the plaintiff's poles and wires, Wilkins avenue is a public street of the city and the others are private streets with the exception of the Frederick road; so that upon this branch of the case the issue is narrowed down to the question whether that road, which is the main artery and thoroughfare used by the appellant for its poles and wires is *a street or highway of the city* within the meaning of the statutes to which we have referred when interpreted in accordance with the legal principles properly applicable thereto.

That a turnpike road is a highway in the ordinary acceptation of that term may almost be said to be a matter of common knowledge. The very purpose for which they are created is to afford safe and convenient ways for public travel. That turnpikes are also highways in contemplation of law is well settled. *Bouvier's Law Dictionary,* Vol. 1, page 947; 29 *Encycl. of Law,* page 3. In *Covington & Louisville Turnpike Road* v. *Sandford,* 164 U. S. 578, it was said by the Supreme Court of the United States: "Turnpike roads established by a corporation under authority of law are public highways and the right to exact tolls from those using them comes from the State creating the corporation." In *Ulman* v. *The Charles St. Avenue Co.,* 83 Md. 144-5, this Court held that the owners of land abutting on that avenue, which was a turnpike road constructed by a corporation under authority from the Legislature like the Frederick road, could not acquire title by adverse possession to any portion of the bed of the avenue because it was a public road or highway.

The Frederick road being a turnpike is also a highway and in our opinion the portion of it lying within the limits of Baltimore City is a "highway of Baltimore City" within the meaning of the statutes to which we have referred in this opinion. The preposition "of" used in that connection is not to be understood as descriptive of or relating to title or ownership, but as indicating location and municipal jurisdiction, and the expression "streets or highways of Baltimore City" should be held to embrace streets or roads within the limits of that city which are currently traversed without objection by its citizens in pursuit of business or pleasure, whether the municipality has or has not acquired the legal title to the land lying under them. In other words the provisions of the statutes to which we have referred were obviously intended to relate not to the title but to the use of the streets and highways to which they refer. Leaving out of view the policy strongly advocated in recent times on economic grounds of authorizing large municipalities to grant exclusive franchises for the supply of such public utilities as water, gas and electric light and power, the danger to the public of the presence of wires charged with deadly currents in, on or over the thoroughfares used by the public may well have influenced the Legislature to require from persons or corporations authorized to conduct an electric light or power business, to first obtain the assent and approval of Baltimore City before erecting poles or stringing wires upon any of the avenues of travel therein.

We have no doubt of the right of the City to invoke, as it has done in this case, the aid of a Court of Equity to restrain by injunction the unlawful continuance by the appellant of its use of the streets and highways of the city. The statutes to which we have referred not only make the obtaining of the consent or permission of the city a condition precedent to using them for the purposes of an electric light business but they also authorize the municipality to charge a fair price for all franchises granted by it for the use of its streets. It has therefore a direct and especial pecuniary interest in

preventing the unlawful use of its streets by the appellant. Its position in that respect is analogous to that of taxpayers seeking to enjoin the violation of a statute or ordinance which would result in an increased rate of taxation or the levy upon them of especial assessments. We have uniformly held that persons whose rights are thus injuriously affected· are entitled to the aid of Courts of Equity by injunction to avert the threatened injury. *Baltimore* v. *Gill,* 31 Md. 395; *Baltimore* v. *Radecke,* 49 Md. 231-2; *St. Mary's Ind. School* v. *Brown et al.,* 45 Md. 310; *Page* v. *Baltimore,* 34 Md. 546; *B. & D. P. Ry. Co.* v. *Pumphrey,* 74 Md. 104; *Bennett* v. *Baltimore,* 106 Md. 495-6.

The decree appealed from must be affirmed.

*Decree affirmed with costs.*