SOMERVILLE WATER COMPANY

*v.*

BOROUGH OF SOMERVILLE.

[Decided January. 18th, 1911.]

1. Where a water company sought a preliminary injunction to restrain the authorities of a city from preventing it from opening the city's streets to lay water pipes, it was no ground for relief that the city authorities acted arbitrarily and unreasonably.

2. An offer by one litigant to another stated to be without prejudice is not admissible in evidence.

3. An offer of compromise stated to be made without prejudice, not being admissible in evidence, cannot be pleaded. Therefore an amendment should not be permitted to allow the incorporation of such an offer into a bill.

4. Where a water company, without right, attempts to open city streets to lay pipes, the city may either resist the invasion of its property or obtain equitable relief, preventing the invasion.

5. Where a water company sought an injunction to restrain a city from preventing it opening certain streets, and the city filed a cross-bill seeking to restrain the water company on the ground that the company was without right, the company could not dismiss the bill and cross-bill.

6. Where the complainant answered a cross-bill filed to the original bill, he cannot, on dismissing the bill, have a dismissal of the cross-bill.

7. Where a bill is answered, it must be fully answered; and hence an answer to a cross-bill which failed to answer interrogatories is open to exception.

8. Public grants of power to corporations are to be strictly construed, and whatever is not plainly granted must be taken to have been withheld.

9. A complainant is not entitled to an injunction to protect a right which depends on a disputed question of law.

10. A water company was organized under act of April 21st, 1876 (*Rev. 1877 p. 1365; 2 Gen. Stat. 1895 p. 2199*), as amended by act of March 12th, 1880 (*P. L. 1880 p. 273*), which, in section 1, provided that a corporation might be formed to construct and maintain water works in any city, town, village, or seaside resort or borough, &c., and in section 2 required the filing of a certificate with the name of the city, town, or village where the works were to be constructed, with the consent in writing of the corporate authorities of the city or town to be supplied with water, and section 12 authorized such companies to lay their pipes under the streets, &c. A company was organized to supply water to two municipalities, and the consent of both was filed.—*Held* that, under the rule that what is not granted is presumed to have been withheld, it was doubtful whether a corporation to supply two towns with water was valid, and whether the consent of the two towns gave the company the right to open the streets; so that a preliminary injunction to restrain one of the cities from preventing the company from opening its streets to lay mains could not be issued.

11. Where a municipal water company sought to justify the laying of enormous pipes through the city's streets upon the ground that they were going to extend their mains without the corporate limits to supply people on adjoining roads, a thing the company could do under the direct provisions of *2 Gen. Stat. 1895 p. 2202 § 369*, upon condition that the consent of the owners on the road be secured, the consent of such owners is a condition precedent to compelling the city to allow the extension, and, until that be shown, the company is not entitled to a preliminary injunction to restrain the city from preventing the laying of the pipes.

12. A water company sought a preliminary injunction to restrain the city from preventing it from opening the streets to lay their mains. The company claimed to have the right to increase and extend mains outside of the city, which right the city denied.—*Held,* that the preliminary injunction would be refused, for, if granted, the mains could be laid before the matter could be decided, and hence the city would be irreparably injured if the company did not have the right which it claimed.

On application for preliminary injunction.

*Mr. Alvah A. Clark,* for the complainant.

*Mr. James L. Griggs* and *Mr. Craig A. Marsh,* for the defendant.

WALKER, V. C.

The complainant filed a bill in this court against the mayor and council of the borough of Somerville praying for an injunction restraining them from interrupting and interfering with the complainant's work of opening Cliff street, in the town of Somerville, and laying its pipes therein. An application for a preliminary injunction was denied upon the ground that it was at least doubtful whether the complainant had the right to proceed in the face of the borough's resistance, when, in fact, the company had not complied with an ordinance of the municipality, which required that the written consent of the chairman of the standing committee on streets be obtained to open any street. Subsequently, application was made for a permit in compliance with the ordinance, which was neither granted nor refused, and which action therefore amounted to a denial.

In *Gaslight Company* v. *Borough of South River, 77 N. J. Eq.* (*7 Buch.*) *487,* the complainant made application to the mayor of the borough for permission to open streets and highways therein for the purpose of laying mains and gas pipes, which it was authorized by law to do, and the mayor refused the permission sought but assigned no reason for his action. This court granted an injunction to prevent the borough and its officers from interfering with the laying of the mains, because it held that the mayor's refusal to grant a permit, which it did not appear he ever considered, amounted to a prohibition, and as such was manifestly void, and as the company had complied with the terms of the ordinance, it became the duty of the mayor to grant the permit, and his action in refusing it was to be disregarded. This case (*Gaslight Company* v. *Borough of South River*) was cited by complainant in the case at bar as authority for the issuing of the injunction prayed for in this case, but, except in respect to overriding the refusal to grant a permit, the case has not, in my judgment, any application to the facts in the case *sub judice.*

After denial of the injunction in the first suit the complainant

filed another bill, the one in this cause praying for the same relief; and an order to show cause why a preliminary injunction should not issue in accordance with the prayer of this bill was made, and on its return was fully argued.

Questions of pleading have arisen and must be disposed of before the merits of the application may be considered and decided.

The complainant asks leave to amend by. charging that subsequent to the filing of the bill it caused a communication to be addressed to the defendant submitting for consideration a proposition looking to a solution and settlement of the difficulties existing between the parties, and that in pursuance of such communication, treaty was had between them, but that nothing came of the negotiations. The prayer for amendment in this regard concludes by charging that the object and position of the mayor and council and chairman of the standing committee on streets is not to grant any application of the complainant, but to vex, harass and annoy it in and about its business of supplying Somerville with water, with the object and purpose of arousing sentiment against the complainant, whereby the people will be induced to agree to a municipal plant upon the theory that the complainant is unwilling to provide an adequate supply of water. Exactly what the complainant hopes it could obtain by this amendment, if made, I fail to see, unless it be that claim would be put forth that the conduct of the defendant in and about the negotiations showed an unreasonable attitude toward the complainant, and its offer of settlement, which, by the way, would not afford a reason for relief to the complainant. The proposition for conference, however, assumed the form of a written stipulation, signed by counsel for both parties, was filed in the cause, and concluded with a provision that the "negotiations shall be without prejudice to either party."

Now, it is perfectly well settled that an offer made by one litigating party to the other is incompetent as evidence, if stated to be made without prejudice (*Richardson* v. *International Pottery Co., 63 N. J. Law (34 Vr.) 248*), and, as the proposition in this case could not be given in evidence, it is not substantive, and

therefore cannot be pleaded.    The application to make this amendment is denied.

Two other amendments are sought, one to make the borough of Somerville a party defendant, it having been sued as the mayor, &c., instead of by its corporate name; and the other charging that application has been made to the chairman of the standing committee on streets for permission to lay a six-inch main on Spring street in Somerville, so that a dwelling in process of erection may be furnished with water, which application has been ignored.    No objection is made by the defendant to the making of the last two mentioned amendments, and they will be ordered to be made.

As complainant and defendant each succeed in part on the question of amendments in this suit, no costs will be awarded on this feature of the litigation.

Another question of pleading has to be dealt with.    It arises in the first suit, which is still pending and open on the record.    In that suit the defendants filed an answer and cross-bill.    In the answer, by way of cross-bill, it is averred, among other things, that the complainant has made a contract in writing with the Piscataway Water Company, the Raritan Township Water Company and the Elizabethtown Water Company, in which it agrees to furnish and supply the Piscataway Water Company large quantities of water not at any time to exceed two million gallons a day; and that the complainant company has never obtained the consent of the borough of Somerville, or the township of Bridgewater or the board of commissioners of Somerville to make and enter into any contract with any other water company for a supply of water; and that the making of the contract mentioned is *ultra vires,* in that the complainant does not own or possess a sufficient water-supply to enable it to furnish a sufficient quantity of water through its proposed thirty-six-inch water main, and has no power to condemn lands or water for any new or additional source of supply, or to divert water from any such source; that within a short time then last past the complainant laid a thirty-six-inch main from its pumping station and stand pipe in the town of Raritan, in the township of Bridgewater, through portions of certain public streets in the borough of Somerville, and that complainant was proceeding to open Cliff street for the

purpose of continuing the laying of the main, when its engineers and workmen were made to desist from further prosecution of the work by the police of the borough, acting under orders from the mayor and council. The cross-bill charges that the thirty-six-inch main is of enormously excessive size for the purpose of supplying the needs of Somerville and its inhabitants, plus the needs of Raritan and its inhabitants, plus the needs of the dwellers along any road leading either from Somerville or Raritan, along which complainant has procured consents of property owners; and that a main sixteen inches in diameter would be of ample size for all such needs for at least fifty years to come; that the improving of the service in Somerville, and the satisfying of the patrons and customers of the complainant and forestalling the danger from conflagration which the complainant professes in its bill of complaint, is a fraudulent pretense, and that the real purpose of complainant is to enable it to fulfill the contract made between it and the three water companies above named; that the laying of the thirty-six-inch main would work injury to the interests of the borough; that through Cliff street, where complainant proposes to lay the main, are sewer pipes, laid at such distance beneath the surface as to make it impossible to lay such main over the pipes; that because of house connections and sewer pipes in the street it would be necessary to dig a trench not less than five feet wide, and not less than nine feet deep, whereas, the laying a main of ample diameter to supply the water needs of Raritan and Somerville would not necessitate a trench of more than two feet six inches in width, and four feet six inches in depth. The cross-bill prays that the complainant may be decreed to cease from further laying a thirty-six-inch water main in Cliff street and other public streets of Somerville; and from laying a main in the borough that may be grossly disproportionate to the needs of Somerville, and the dwellers along any road leading from it, as such needs now exist or are likely to arise in the next thirty years; also that the complainant may discover as to whether or not it made a contract with the three water companies above mentioned and the terms thereof; and whether or not it had procured the consent in writing of the owners of property along the roads through which it proposes to lay a water main under the contract;

and whether or not it has procured the consent, by ordinance, of any municipality through which the main is proposed to be laid as required by law; and whether or not it has procured the consent in writing of the majority in frontage of the owners of land on or along any road or portion thereof leading from Somerville, to extend its mains outside and beyond the corporate limits of the borough for the purpose of supplying dwellers with water; and if any such consents have been obtained, for what frontage, and along what road.

On the hearing of the application for a preliminary injunction in this cause, the complainant's counsel moved to dismiss the bill and cross-bill in the former cause.

The defendant's counsel resists the application to dismiss the cross-bill, upon the ground that it is the province of the borough to prevent the digging up its streets, and of laying pipes therein which it alleges is illegal, and claims the right to invoke the aid of this court, without the intervention of the attorney-general, if, as charged in the cross-bill, the complainant has failed to comply with conditions precedent, expressly prescribed by the statute in that behalf.

If the act of the complainant is illegal, two remedies are open to the defendant, one, to resist the invasion of its property, and the other, to apply to this court to compel the defendant to desist from such invasion. The latter course is within the right of the defendant and is preferable, and therefore the cross-bill is properly filed and will not be dismissed.

Another reason exists for not dismissing the cross-bill, and that is, that before making the motion to dismiss, the complainant submitted to answer the cross-bill. To this answer exceptions were submitted, as follows—*first,* that the complainant has not, in its answer to the cross-bill, set forth whether it procured the consent, by ordinance, of any municipality or municipalities through which the thirty-six-inch water main or mains are proposed to be laid under the contract for the supply of other water companies referred to in the cross-bill; and *second,* that the complainant has not set forth what, if any, consents, in writing, of the owners of land fronting on any road or street leading from the borough of Somerville have been obtained under the statute in the cross-bill

referred to, and for what frontage along any such road or street. On the authorities these exceptions must be sustained. If a defendant submits to answer he must answer fully. *Thompson* v. *North, 67 N. J. Eq. (1 Robb.) 278; City of Salem* v. *Board of Health, 76 N. J. Eq. (6 Buch.) 264.*

The complainant may enter a decree dismissing his bill in the former suit, with costs, to the answering defendant, if he so elects; but it must be without prejudice to the defendant's rights to prosecute its cross-bill. The motion to dismiss the cross-bill will be denied, with costs. The answer to the cross-bill, of course, stands, and there must be further answer in regard to the matters to which exception was made. The defendant is entitled to costs on the exceptions.

This brings me to the consideration of the merits of the application before the court.

The Somerville Water Company was organized under an act of the legislature authorizing the construction, maintenance and operation of water works, approved April 21st, 1876. *Gen Stat.* p. 2199.

The defendant makes the following contentions, among others, against the complainant's claim of right: that the attempted incorporation of the complainant company was a nullity, because unauthorized, in this, that the authority, by legislative enactment, was to form a water company for operating in *any* city, town, village, or seaside resort, having a population of not more than fifteen thousand and not less than five hundred inhabitants, and supplying *such* city, town, village or seaside resort with water; that section 2 of the act provides that the certificate of incorporation shall state the name of the city, town or village in which the works are to be constructed, and the business of the company carried on, and further provides that such certificate shall be filed in the office of the secretary of state, together with the consent in writing of the corporate authorities, if any, of the town or city proposed to be supplied with water; that the legislative intent was to authorize the incorporation of a company to supply water to a *single* city, town, village or seaside resort; whereas, the complainant's certificate of incorporation, instead of being confined to *one* municipality, is extended to *two,* namely, Somerville

and Raritan; that the complainant's certificate of organization expressly set forth the town of Somerville and the adjoining town of Raritan as the names of the towns in and for which such works were to be constructed; that the certificate having thus set forth a purpose not authorized by the statute, it was not within the power of the corporate authorities of Somerville to consent to the alleged incorporation, the consent being in these words: "And this board hereby consents to the incorporation of said water company for the purposes aforesaid." A second consent is alleged to have been given by the corporate authorities of Raritan; and it is claimed that both consents were, therefore, to an incorporation for a purpose not authorized by the act, and were nullities. Further, that the consent of the proper corporate authority to the complainant's incorporation was not obtained; that the conditions precedent to the exercise of its right to lay water pipes in the public streets not having been complied with, the complainant has gained no such right as a *de facto* corporation; that the complainant not having shown a right to open the streets and lay pipes therein, it follows that the defendant is entitled to an injunction as the only way of affording full, complete and adequate remedy to the borough in the enjoyment of its statutory right; that if complainant is legally incorporated and possessed the rights of a water company in Somerville, it has no right to lay the proposed thirty-six-inch main, because a main of that size is out of proportion to the needs of Somerville, plus the needs of Raritan, plus the needs of dwellers along any road or streets leading from those towns, which the complainant is authorized to supply with water, as those needs now exist, or as they will be likely to arise for fifty years to come; that injunction should be denied because the alleged right of the complainant is legal and not equitable, and is not clear and undisputed, and depends upon a disputed question of law.

Now, let us examine the question as to whether the incorporation of the Somerville Water Company was valid. It was effected under the act of April 21st, 1876 (*Rev. p. 1365; Gen. Stat. p. 2199*), amended by act of March 12th, 1880 (*P. L. 1880 p. 273*). The act, as it stood amended, and under which the complainant

company was formed, provided (section 1) that a company might be incorporated

"for the purpose of constructing, maintaining and operating water works in any city, town, village or seaside resort or borough in this state, having a population of not more than fifteen thousand and not less than .five hundred, and for the purpose of supplying such city, town, village or seaside resort or borough, and the inhabitants thereof, with water."

Section 2 of the act provided, among other things, that the persons desirous of forming a company for the purposes of the act, should make, file and acknowledge a certificate, in writing, which should state

"the name of the city, town, or village in or for which such works are to be constructed and the business of the company carried on; such certificate shall be filed in the office of the secretary of state, together with the consent, in writing, of the corporate authorities, if any, of the town or city proposed to be supplied with water."

By section 12 it is provided

"that such company be and they are hereby fully authorized and empowered to lay their pipes beneath such public roads, streets, avenues and alleys, as they may deem necessary for the purposes aforesaid, free from all charge to be made by any person or persons, or body politic whatsoever, for said privilege and also such hydrants at the crossings or intersections of said streets and alleys; *provided*, that the said pipes shall be laid at least three feet below the surface of the same, and shall not in anywise unnecessarily obstruct or interfere with the public travel, or damage public or private property; and *provided*, that the consent shall be obtained of the corporate authorities, if any there be, of any town through which the same may be laid."

By supplement of March 23d, 1883 (*Gen. Stat. p. 2202*), it is provided

"that it shall and may be lawful for any aqueduct or water company organized under the act to which this is a supplement, or specially chartered for the purpose of supplying any city, borough or town with water, to extend its mains outside and beyond the corporate limits of such city, borough or town, along any road or street leading therefrom, for the purpose of supplying the dwellers along such road or street with water, provided a majority in frontage of the owners of land fronting on said road or street, or any portion thereof, proposed to be supplied, shall consent thereto in writing."

The consent of the corporate authorities of Somerville both to the incorporation of the company and the use of the streets was given.

Counsel for defendant urges that the words of the act under which the complainant was incorporated limit the purpose of incorporation of any *one* company to supplying with water a *single* city, town, village or seaside resort, and they point out that the complainant's certificate of incorporation, instead of being confined to the purpose so defined and limited, sets forth its purpose to be the construction, maintenance and operation of water works in two towns, instead of one, and the supplying of *both* of such towns, and the inhabitants of *both,* instead of one, with water; and that instead of setting forth the name of the city, town or village, in which such works are to be constructed, it expressly designates two, namely, the towns of Somerville and Raritan. They further contend that the certificate having thus set forth a purpose not authorized by the statute, it was not within the power of the corporate authorities of Somerville to consent to the alleged incorporation.

In *Hampton* v. *Clinton, 65 N. J. Law (36 Vr.) 158,* the supreme court had under consideration the legality of proceedings in condemnation by a water company formed under the act now being considered, in which a certificate had been filed in the office of the secretary of state, but the consent in writing, of the corporate authorities of the town proposed to be supplied with water, which, by the provisions of the act, must accompany the certificate, was not filed. Referring to the contention that the defendant was a *de facto* corporation, and subject only to direct attack on *quo warranto,* the supreme court said (quoting from *Tyler* v. *Plainfield, 54 N. J. Law (25 Vr.) 526)* that only when the certificate and consent have been filed does the incorporation become complete, and that this differs from the General Corporation act as to which it has been held that the recording and filing of the certificate are not conditions precedent to the legal existence of the corporation, but merely the necessary evidence of such existence (*Vanneman* v. *Young, 52 N. J. Law (23 Vr.) 403*), and that under that act whenever the certificate is filed, it relates back to the time named therein for the commencement of corporate

14

existence. In the case before the court (*Hampton* v. *Clinton*), there was an attempt to take the property of a citizen against his will, and the court observed that whether in such a case the regularity of incorporation may be attacked is a vexed question; but remarked that no doubt non-compliance with the conditions precedent to incorporation would defeat a condemnation. The opinion concluded that whether the court construed the defendant as never incorporated, or as not having procured the requisite municipal consent at the time it sought to take the prosecutor's property, the result was the same, and the attempt to condemn was nugatory.

The supreme court of the United States, in *Oregon Railroad Co.* v. *Oregonian Railway Co., Ltd., 130 U. S. 1; 32 L. Ed. 837* (at *p. 842*), said:

. "It is to be remembered that where a statute making a grant of property, or of powers, or of franchises, to a private individual of a private corporation, becomes the subject of construction as regards the extent of the grant, the universal rule is that in doubtful points the construction shall be against the grantee and in favor of the government or the general public."

See, also, *National Trust Co.* v. *Miller, 33 N. J. Eq. (6 Stew.) 155, 162; Jersey City Gas Light Co.* v. *Consumers Gas Co., 40 N. J. Eq. (13 Stew.) 427, 429; Stockton* v. *Central Railroad Co., 50 N. J. Eq. (5 Dick.) 52, 62.*

*Public Service Corporation* v. *De Grote, 70 N. J. Eq. (4 Robb.) 454,* is relied upon by the complainant for the proposition that a corporation having the power not only to maintain gas mains and pipes in the streets of a village, which it has the right to supply with gas, has also the right to lay and maintain in such streets pipes large enough for the transmission of gas to other municipalities in which it has power, and is charged with the duty of purveying gas, and reasons therefrom that a water company similarly situated has the same power. The defect of the reasoning lies in this fact: By an act of April 8th, 1903, relating to corporations having authority to lay or maintain gas pipes or mains in the streets or public places of any municipality for the distribution of gas, it is provided, among other things, that any such company may use its pipes or mains, within such munici-

pality, for the transmission of gas, to any other municipality in the streets or public places of which it may also have lawful authority to lay or maintain pipes or mains for the distribution of gas. The act dealt with a situation where there were two separate franchises and provided that any corporation in the possession of two such franchises (by consolidation) might use its pipes or mains within the corporate limits of each municipality, for the transmission of gas to the system maintained in the other; and Vice-Chancellor Stevenson said in that case (*Public Service Corporation* v. *De Grote*) that the legislature had laid down the rule, in such a case as was before him, that the companies would be permitted to lay large enough pipes anywhere throughout the entire area over which their franchise extended, not only for the supplying of gas within a particular municipality in which the pipes were laid, but large enough to supply the whole system, and for the reasons which he indicated he reached a general conclusion that the complainant corporations, or one of them, had the power, not only to maintain a plant of gas mains and pipes in the streets of Ridgfield Park, but a right to lay and maintain pipes therein large enough for the transmission of gas to the other municipalities in which the complainants, or one of them, had the power, and were charged with the duty of purveying gas.

As this question was decided on the act of 1903, and as no similar act concerning a consolidation and giving additional powers to separate water companies has been passed, I fail to see that it is any authority for the complainant's position. Anyhow, if such an act existed with reference to water companies, it is neither pleaded nor proved that the complainant falls within it. Complainant does not invoke powers derived from any act save that under which it was incorporated and the supplement of March 23d, 1883; and does not claim a right through or under any other company, but only in and of itself.

Complainant places reliance upon *Long Branch Commission* v. *Tintern Manor Water Co.,* 70 *N. J. Eq.* (*4 Robb.*) *71.* The defendant, the Tintern Manor Water Company, was the successor, through merger and consolidation (under sections 104-107 of the act concerning corporations, *P. L. 1896 p. 277*) with the Long Branch Water-Supply Company which was organized in

1882 under the act of April 21st, 1876. The declared object of the latter company was to supply with water the township of Ocean (Monmouth county) and the seaside resorts of Long Branch, Monmouth Beach and Sea Bright and adjacent places. Long Branch was the only one of those places then incorporated. Attached to its articles of incorporation was the joint consent of the municipalities of Long Branch and of Ocean township.

It does appear from the facts recited in the *Tintern Manor Water Case* that the Long Branch Water-Supply Company did exactly what the Somerville Water Company did; that is, formed a corporation to supply two municipalities with water, namely, Ocean township and Long Branch; and it obtained the consent of both municipalities. That case, however, is no authority for the complainant in this case, because the question here pressing for solution was not raised by counsel or noticed by the vice-chancellor in that case.

The defendant contends that the township of Bridgewater was the municipality whose consent was requirable to clothe the complainant company with corporate existence (section 2 of act) and to empower it to lay pipes in the streets (section 12), and that the town of Somerville was merely a *quasi*-municipal corporation formed for certain defined and restricted purposes under the private act of the legislature. *P. L. 1863 p. 479.* On this application it is unnecessary to decide this question, because, in my judgment, under the act of the legislature (*Gen. Stat. p. 2199*) whether a water company could be formed for supplying more than one municipal corporation (and in this case the company, as we have seen, was formed to supply two municipalities) is at least doubtful. Under the cardinal rule of construction laid down by Vice-Chancellor Van Fleet in *Jersey City Gaslight Co.* v. *Consumers Gas Co., 40 N. J. Eq. (13 Stew.) 427,* that public grants are to be strictly construed, and whatever is not plainly granted must be understood to have been withheld, it would seem that the act of 1876, under which the complainant company was incorporated, and which provides for the formation of a company for the purpose of constructing and operating water works in any city, town, village or seaside resort, meant the formation of such corporation in any one such municipality, especially as the dis-

junctive word "or" is used in defining the place for which the company may be formed and its work carried on. Additional force is given to this view when we consider that section 2 of the act requires that the certificate of incorporation shall be filed with the consent in writing of the corporate authorities, if any, of *the* town *or* city to be supplied with water.

City, town, village or seaside resort, it would seem, cannot mean city and town, or town and village, or village and seaside resort, or city, town, village and seaside resort.

The Gas Company act, passed on the same day as the Water act (*Gen. Stat. p. 1608*), contains a similar description of municipalities in which gas may be supplied and distributed by corporations formed under the act, the exact language being, "the village, town or city in which it is proposed to supply and distribute illuminating gas."

In *Broome* v. *Telephone Company, 49 N. J. Law (20 Vr.) 624, 625*, the word "town" in our legislation was held to be variable and its signification in any particular enactment to depend largely upon the occasion and purpose of the law, and in that case it was held that the word was broad enough to include all such places, whether formerly styled towns, townships, boroughs or villages. This pluralization of the word comprehended classes of places, and the case did not hold that the word "town" should be given a plural significance so as to include more than one of such places when the singular number was used.

It is settled law that a preliminary injunction will not issue in a doubtful case. Complainant is not entitled to a preliminary injunction to protect a right which depends on a disputed question of law. *Jersey City Gaslight Co.* v. *Consumers Gas Co., ubi supra.*

It is a grave question, and at least a doubtful one, whether the consent by the towns of Somerville and Raritan was such a compliance with conditions precedent as entitles the complainant water company to open the streets of the borough of Somerville. This alone is sufficient to deny the preliminary application. But that is not all; the complainant has not shown that it has the necessary consents of property owners to lay its mains. I take it that before the complainant company can open the streets of

Somerville and lay enormous water pipes in them—pipes far larger than any reasonable requirement of the present or future would seem to call for—it must show that it possesses the conditions precedent to the right to supply the dwellers along such roads as a basis for laying pipes in the streets of Somerville to carry water through and out of the town to supply such residents beyond. Certainly the provision in the statute that the consents of the owners along the roads must be obtained means something, and if it means what it says, it follows that any person or body corporate who owes a water company a duty with respect to the right claimed, is entitled to be shown that the company has the authority to require compliance and obedience with its requests.

Nor do I think that the exigencies of the case call for a preliminary injunction. If the writ issued the complainant could doubtless fully accomplish its undertaking before final hearing and thus the defendant would suffer irreparable injury. The court of errors and appeals has recently reiterated the established rule that a preliminary injunction shall never issue except to prevent such injury. *McMillan* v. *Kuehnle,* November term, 1910, not yet reported. See, also, *Citizens Coach Co.* v. *Camden Horse Railroad Co.,* 29 *N. J. Eq.* (2 *Stew.*) 299, and *Haggerty* v. *Lee,* 45 *N. J. Eq.* (18 *Stew.*) 255.

The complainant company has been supplying Somerville with water for a generation, and there is no complaint that its present plant and works will not supply the reasonable requirements of the borough now and for some considerable time to come, and, if the complainant is entitled to increase its plant, as claimed, it will suffer no great injury by being compelled to wait until its rights can be ultimately adjudged upon the final hearing of this cause.

The motion for preliminary injunction will be overruled, with costs.