THE TOWN OF SEAFORD, a municipal
corporation of the State of
Delaware.

*vs.*

EASTERN SHORE PUBLIC SERVICE COMPANY,
a corporation of the State of
Delaware.

*Sussex, April* 13, 1937.

2

*Ralph S. Baker,* of Georgetown, *James R. Morford,* of the firm of Marvel, Morford, Ward & Logan, of Wilmington, and *William H. Bennethum, 3d,* of Wilmington, for complainant.

*Frank M. Jones* and *James M. Tunnell,* of the firm of Tunnell & Tunnell, both of Georgetown, *Caleb S. Layton,* of the firm of Richards, Layton and Finger, of Wilmington, and *F. W. C. Webb,* of the firm of Woodcock, Webb, Bounds & Travers, of Salisbury, Md., for defendant.

THE CHANCELLOR: The act creating the complainant as a municipal corporation (29 *Delaware Laws, c.* 153) gives the complainant jurisdiction of a rather comprehensive nature over the streets, etc., of Seaford. *Section* 16 vests in the councilmen "the superintendence and oversight of all the roads and streets" of the town. *Section* 19, *inter alia,* particularizes in more detail the authority of the council over the streets, etc., as follows: to ascertain and establish their boundaries, to regulate and keep them in repair,

to prescribe the manner in which corporations or natural persons shall exercise any privilege granted to them to use the streets, and "to prevent or regulate the erection of any * * * post or erection, or any projection * * * in, over or upon any street, * * * and to remove the same where already erected."

Though the defendant as an electric utility company has the power under *Section* 2188, *Revised Code* 1935, to use the public roads, streets, etc., in the State for the purpose of erecting of poles, etc., for the carrying of wires and fixtures, yet this power is expressly withheld by the section in reference to the streets of a town, unless the consent of the proper town authorities is first, and as a condition precedent, obtained.

In view of the foregoing it can hardly be denied that the General Assembly has conferred upon the Town of Seaford the authority to determine when and under what circumstances an electric utility corporation, such as the defendant, may use the public highways located in the town for the purpose of erecting and maintaining thereon the physical facilities of poles, etc., for the transmission of electric current to its customers.

1. But the defendant by its first ground of demurrer contends that even so, the complainant, under the facts shown in the bill, is not a competent party to maintain a bill for injunction against the defendant's alleged unlawful use of the streets. The bill, if maintainable at all, argues the defendant, is maintainable only by the Attorney General of the State suing in behalf of the general public.

This contention is predicated upon the proposition that the maintenance of the poles, etc., upon the streets, if unlawful, is a public nuisance, which, in the absence of a showing of injury which is peculiar and individual to the town, cannot be redressed by way of injunction at the suit of the

complainant. It is undoubtedly the general rule that the proper remedy in a court of equity against the wrong of a public nuisance is by an information at the suit of the Attorney General, who represents the public generally. *Harlan & Hollingsworth Co. v. Paschall,* 5 *Del. Ch.* 435. Private parties are afforded injunctive relief against a public nuisance only when they can show they are injuriously affected thereby in a direct way which particularly differentiates them from the public generally. *Ibid.*

But when the complaining party is an incorporated municipality, vested with a portion of the State's sovereignty over streets, roads, etc., lying within the boundaries of its jurisdiction, can it reasonably be said that it has so far the character of a private individual that the general rule just referred to is applicable to it? No Delaware case has so held. The authorities elsewhere are in conflict upon the question. The decided weight however favors the view that in the case of a municipality, vested by the state with such power as the complainant possesses, a bill for injunction may be maintained in the municipality's own right.

The ground upon which the authorities rest is not always the same. In some it is held that as the State has conferred upon its governmental creature its own sovereign power to regulate the use of highways, subject always of course to its own superior authority, to the extent that the highways lie within the municipal limits, it is beyond reason to say that the State did not mean at the same time to confer on its governmental agent power as full as the State's to protect and enforce by every means the State could employ the jurisdiction which it had granted. Accordingly in those jurisdictions where this view prevails, the courts have held that in a bill of the pending sort the Attorney General is not the only party qualified to maintain it—the municipality may sue in its own name. *People ex rel. Bryant v. Holladay,* 93 *Cal.* 241, 29 *P.* 54, 27 *Am. St. Rep.* 186; *San*

*Francisco v. Buckman,* 111 *Cal.* 25, 43 *P.* 396; *Township of Hutchinson v. Filk,* 44 *Minn.* 536, 47 *N. W.* 255; *Metropolitan City Ry. Co. v. Chicago,* 96 *Ill.* 620. In other cases the right of a municipality to maintain a bill in its own name is placed on a ground that harmonizes with the general rule above referred to as laid down by this court in *Harlan & Hollingsworth Co. v. Paschall, supra,* where a private party was the complainant, viz., on the ground that as the municipality is under a duty to keep the highways in proper condition and is liable for injuries occasioned by obstructions and defects therein, it suffers an inconvenience and injury peculiar to itself, as distinguished from the State's general public, from a nuisance in the highway and is accordingly, aside from any conception of delegated sovereignty, entitled to maintain a bill for injunctive relief. *Burlington v. Schwarzman,* 52 *Conn.* 181, 52 *Am. Rep.* 571; *Springfield v. Connecticut River R. Co.,* 4 *Cush.* (*Mass.*) 63; *Philadelphia v. Thirteenth & F. Streets, etc., Co.,* 8 *Phila.* (*Pa.*) 648; *Town of Jamestown v. Chicago, etc., Co.,* 69 *Wis.* 648, 34 *N. W.* 728. In *Hill v. St. Louis & N. E. Ry. Co.,* 243 *Ill.* 344, 90 *N. E.* 676, it is categorically stated that a bill to compel a public utility to remove its facilities from the city streets, may be maintained not only by the Attorney General, or the State's attorney, but as well by the city. See, also, 4 *Pomeroy, Eq. Juris.,* (*4th Ed.*) § 1349.

The cases dealing with the subject may be found collected and commented upon in notes to 51 *L. R. A.* 657; *L. R. A.* 1916*D,* 1020; 65 *A. L. R.* 699. Their decided weight, so far as the result is concerned, is to the effect that the municipality has the right to proceed by bill in its own name. Those cases which predicate the right on the status of the municipality as a subordinate branch of the state government to which has been delegated a portion of the state's governmental powers, seem to me to rest on sounder principle and to be supported by more cogent reasoning.

If the municipality has the right in its own name to seek redress against the nuisance in a court of equity, the question may arise as to whether the state through its Attorney General has lost the right. That question, however, is not one that the instant case requires the court to consider. It was involved in *State ex rel. Hoffman v. Swift & Co.*, 127 *Kan.* 817, 275 *P.* 176, 65 *A. L. R.* 696, and annotated in the *A. L. R.* report of that case.

The conclusion on the first ground of the demurrer is that the bill is not objectionable because of any incompetency of the complainant to maintain it.

2. The next ground of demurrer is that the bill fails to show clearly and convincingly that any injury or damage to the complainant or to the public is certain or will necessarily result from denial of the restraints prayed.

If this were a bill by a private citizen to enjoin the use of the streets by the defendant for the purpose of maintaining its poles and wires, the point made under this head would possess far more of merit than it does.

The substantial controversy which the bill shows as existing between the complainant and defendant is this. The defendant's franchise heretofore granted by the town has expired. The responsible town officials do not wish to renew it. They desire to grant, have in fact granted, a franchise to another company upon terms which, in the judgement of those upon whom the responsibility rests under the law to decide such matters, are deemed acceptable. The town is quite frankly desirous of eventually acquiring the plant and facilities of the new grantee at a date in the relatively near future. Its purpose, in other words, is to exercise its option under the contract with the new company, whereby in the course of a few years, not longer than five, it may become the owner of the plant and thereafter operate it as a municipal enterprise.

The defendant argues that no clear injury to the complainant is threatened if two electric light companies use the streets and further that there may in fact never be two companies operating in the town, on the theory, I suppose, that the new company might default in constructing its plant or fail in its operation. Furthermore, it is argued, the franchise to the new company is being attacked for an alleged invalidity and if the same is finally held invalid, the new company will be unable to supply current to the residents, its plant cannot be acquired, and, if the defendant is ousted from the streets, the town would suffer a great wrong in being deprived of any source of electric supply. Hence, the defendant argues, the bill shows neither a present injury nor a positive future one on any definite date.

Numerous authorities are cited to sustain the proposition that to establish a public nuisance in a suit to enjoin its continuance, the evidence must be clear and convincing (*Harlan & Hollingsworth Co. v. Paschall, supra; Attorney General v. Doremus,* 11 *Del. Ch.* 277, 101 *A.* 868; *Finch v. Barr & Dougherty,* 15 *Del. Ch.* 170, 132 *A.* 889) ; and that before an injunction will issue against such a public nuisance as an obstruction on or over a street, there must be present in the case something more than an abstract legal right—there must be a substantial injury, a real obstruction to the free use of the street. *Gray, Attorney General, v. Baynard,* 5 *Del. Ch.* 499. As general propositions, these statements of the law are not contested. It is denied, however, that they are at all at variance with the complainant's case as made by its bill.

The case made by the bill is one where the former holder of a utility franchise which has expired has expressed its purpose to continue to occupy the town's streets, etc., with its poles, wires and fixtures, in spite of the fact that the town has granted a franchise to another company under terms, conditions and circumstances which contem-

plate the acquisition by the town of the new plant and transmission lines as a municipally owned and operated utility, and in order to facilitate the installation of the new line of poles, wires and fixtures has ordered the defendant to remove its own poles, etc., not later than a given date.

Conceding that the defendant's threat to remain on the streets for the purpose of supplying current to all those who will take it, is a threat to continue in the perpetration of a public nuisance and relief against it in a court of law is to be tested by the law of nuisances, yet the general rule that denies relief against a public nuisance unless irreparable injury be shown is not infringed by affording relief in this case. This is for the reason that the unlawful maintenance of the line on the streets cannot but be of substantial injury to the town. So long as the line remains there and is threatened to be used in competition with the new line, the material interests of the town are bound to be affected. The town and its new grantee are entitled to know whether a threatened unlawful occupancy of the streets is to be permitted to impair the earnings of the new company by competing with it for the business of the consumers of current. This is especially important in view of the fact that under the contract with the new company, a formula is provided for the ascertainment of so-called earnings which are agreed shall go as a credit to the town on the purchase price of the plant, the purchase price being the actual cost of construction.

The town then has a very material and, if the expression may be used with reference to a municipal corporation, a very personal interest in the removal of the nuisance. In *Patapsco Electric Co. v. Baltimore City,* 110 *Md.* 306, 72 *A.* 1039, a pecuniary loss or damage to the city arising because of the unlawful presence on a public street of poles and wires, such as to justify the issuance of a mandatory injunction, was found by the court, which was much more remote than that discoverable by the bill in this case.

Aside, however, from this aspect of special injury to the town, it has been held elsewhere that the very occupancy of the streets without lawful authority by tracks, poles, etc., constitutes such a public nuisance as courts of equity will award injunctive relief against at the suit of the governing body having jurisdiction over the streets—and this without any showing beyond the unlawful occupancy. *City of Pittsburgh v. Pittsburgh, etc., Ry. Co.*, 263 *Pa.* 294, 305, 106 *A.* 724; *City of Roswell v. Mountain States T. & T. Co.*, (*C. C. A.*) 78 *F.* (2d) 379.

But unlawful occupancy of the streets by the defendant is not only describable as a public nuisance. It is as well a purpresture. A purpresture is defined in *Sullivan v. Moreno*, 19 *Fla.* 200, 228, as "any encroachment upon the sovereign, either in highways, rivers or streets or harbors" (see, also, *City of Montpelier v. McMahon*, 85 *Vt.* 275, 81 *A.* 977), and in *Leitchfield Mercantile Co. v. Com.*, 143 *Ky.* 162, 136 *S. W.* 639, and *People ex rel. Britton v. Park & O. R. Co.*, 76 *Cal.* 156, 18 *P.* 141, it is said that while a purpresture may be a public nuisance, it is not necessarily such and may exist where the public is not put to any inconvenience whatever. It may be abated or removed whether it is a nuisance or not, irrespective of any damage which may accrue, while if the proceedings is one to remove a nuisance, a nuisance in fact must be shown. *People v. Vanderbilt*, 26 *N. Y.* 287. As to the power of a court of equity to protect the public from purprestures, see *State v. Ehrlick*, 65 *W. Va.* 700, 64 *S. E.* 935, 23 *L. R. A.* (*N. S.*) 691.

The threatened occupancy by the defendant of the streets of Seaford after the limit set by the town's consent, will be both a purpresture and a nuisance and as such is subject to be removed by lawful proceedings directed to that end.

That the defendant may properly be enjoined against the continued occupancy of the public highways and streets,

with its poles, etc., after the consent of the town is terminated, is held in the following cases: *City of Sullivan v. Central Illinois Public Service Co.,* 221 *Ill. App.* 561; *Patapsco Electric Co. v. Mayor, etc., of Baltimore,* 110 *Md.* 306, 72 *A.* 1039; *Iowa Electric, etc., Co. v. Town of Grand Junction,* 216 *Iowa,* 1301, 250 *N. W.* 136. The ground upon which the court in each of these cases rested its opinion, whether upon that of a nuisance or of purpresture, is not stated.

That the unlawful occupancy is not at present existing is not essential, under the facts as shown by the bill, for the suit to be maintained. A threatened nuisance or purpresture, is as much subject to the injunctive remedy as one that is presently existent. It is so also with respect to a threatened trespass, where the case is otherwise consistent with the principles of equity jurisdiction. Where the purpose is expressly avowed on the part of the defendant to continue to occupy the complainant's streets in defiance of the complainant's wishes to the contrary, and where that very threat constitutes, as it must, an annoying if not a decidedly obstructive interference with the complainant's efforts to facilitate the progress of its new grantee in constructing its plant and erecting its line, and is calculated to cause the complainant's new grantee to entertain apprehensions over the financial risks it assumes, in view of the threatened competition from the defendant's line, it would appear that the threatened purpose is one which, though it speaks of the future, yet contains features of a material present injury.

The defendant argues under this head of its demurrer that if the complainant succeeds in maintaining its bill, the citizens of the town will be injured in that, if the complainant succeeds in its suit, the town is in danger of being deprived of any source of supply of electric current. This may be so. I do not pretend to say. It is sufficient only to observe

that the town authorities are the duly constituted spokesmen for the citizens in a matter of this kind. If the town authorities in the exercise of their honest discretion deem it best that the defendant remove its facilities from the town's streets, it is not for this court to say, much less for the defendant which is the unfortunate loser of the town's prospective business, that the judgment of the town authorities should be overthrown.

The defendant relies very strongly on *Town of Kearny v. Mayor, etc., of Bayonne*, 92 *N. J. Eq.* 627, 114 *A.* 550, in support of its contention that the bill should not be retained because no certain injury will result to the complainant if the injunction is denied to it. I have examined that case with the care which the emphasis placed upon it by the solicitors for the defendant demands that I should. I shall not discuss the case. It is sufficient to say that the fact situation in that case is so completely different from what we have here, that I cannot attach to the case any helpful significance in the instant one.

3. The third ground of demurrer is that disaster and injury to the complainant and the public will result from an injunction prohibiting the defendant from supplying electricity in Seaford after May 30, 1937. This contention calls upon the court to assume a right to substitute its judgment of what is best for the citizens of the town in place of the judgment of the officers of the town on whom the law has cast the duty of discretionary decision. This, the court should not do. *Taylor, et al., v. Smith, et al.*, 13 *Del. Ch.* 39, 115 *A.* 405.

4. Under this head, it is contended that the complainant has an adequate remedy at law.

If the defendant should maintain its poles, etc., on the streets after the forbidden date, the town would undoubtedly have the right and power itself, or through its agents and employees, to cause their removal. *Section* 28 of the

town's charter confers that right and power. The relief which the town can secure under that section is summary. In brief it is that the town can through proceedings of its council command a constable to remove the obstructions. The constable may engage such assistants as he may need, employ such horses, carts, tools and implements as may be necessary and do all things necessary to effect the removal. The cost is charged against the person causing the obstruction, and may be collected out of the goods and chattels of such person by a warrant issued in the same manner as are warrants for the collection of the expenses of any paving, gravelling, etc., chargeable.

Now it does not seem reasonable that the town should be required to abide the approach of the time when the defendant's occupancy of the streets shall have become an accomplished nuisance or purpresture, and then be put to the expense and trouble of doing for the defendant what, on the showing of the bill, it should do for itself. What the town desires and what it is entitled to have under the circumstances shown by the bill, is relief against the threatened wrong before its consummation. The fact that the town has the remedy of summary abatement of the nuisance available to it at some future day, is not such an adequate remedy at law as will deprive a court of equity of jurisdiction to afford preventive relief by way of injunction. In a note found in 40 *A. L. R.* 1169, it is stated that "practically all courts entertain jurisdiction of suits by the state, or political subdivisions thereof, to restrain obstruction of the streets, public highways, navigable rivers, etc.—purprestures—notwithstanding that the maintenance of such an obstruction amounts to a criminal nuisance, abatable by indictment." In addition to the cases cited in support of that statement of the rule, see, also, *Borough of Stamford v. Stamford Horse R. Co.,* 56 *Conn.* 381, 15 *A.* 749, 1 *L. R. A.* 375, in which it was expressly held that notwithstanding the borough had the right to remove the defendant's tracks

from the street by force, as the complainant here would have when its consent is withdrawn from the defendant, the remedy by way of injunction was nevertheless available.

If the remedy which the complainant may have at law be thought of in terms of a judgment for damages, it does not seem that that remedy could be plain and adequate, in view of the peculiar nature of the encroachment and the manifest difficulty of measuring the damage which the complainant as a municipality would suffer. *Clark v. Jeffersonville, etc., R. R. Co.,* 44 *Ind.* 248. In *Somerville Water Co. v. Borough of Somerville,* 78 *N. J. Eq.* 199, 78 *A.* 793, 796, the borough filed a cross bill to enjoin the complainant from an intended unlawful laying of a water main in the street, and the court held that the cross bill was maintainable, saying that two remedies were open to the borough, one to resist the invasion of its property, and the other to apply to the Court of Chancery to compel the defendant to desist from such invasion. "The latter course," said the court, "is within the right of the defendant and is preferable."

When an electric light company proposes to carry out its declared purpose of unlawfully occupying the streets of a town with its poles, wires and fixtures, it does not accord with reason to say that the municipality must await the commission of the wrongful act before it can act in prevention of the injury, and then proceed either in an action at law to abate the nuisance or to sue for damages, or exercise force in the enforcement of a summary remedy, which is available to it. The practical and efficient ends of justice and its prompt and peaceful administration, are considerations which suggest that resort to a court of equity for its adaptable remedies ought not to be denied to the municipality.

I have seen no case among the many which I have examined which holds that under circumstances such as are

here alleged, the complainant ought to resort to the law forums for satisfaction.

The conclusion under this head is that the complainant is not to be put out of this court because of any supposed adequacy of remedy at law.

5. It is urged that the injunctive relief which the complainant asks is prematurely sought. This is but another way of objecting that a nuisance or purpresture must be presently existing before a court of equity will afford injunctive relief against it. It ignores the rule that a wrong which is threatened is in proper case as much subject to the preventive remedy as one that is continuing. If the defendant carries out its declared purpose, then a threatened nuisance or purpresture is to be shortly visited upon the complainant. The cases hereinbefore cited show that such a threat of injury as distinguished from its present commission, warrants the affording of injunctive relief to the prospectively aggrieved town.

6. Next it is objected that only the complainant can fix the time when the defendant must remove its distribution facilities from the streets of Seaford and the Chancellor has no jurisdiction or power to fix that time. The proposition may be accepted as correct. The bill does not ask the Chancellor to decide for the town the date when the defendant shall take its property off the streets. The town has decided that already. That, however, the Chancellor if he should decree the issuance of an injunction would have the power, in the interest of equity and justice to the defendant, to postpone the operation of the writ to a definite date, does not seem to me to be open to question. That is far different from saying that the Chancellor has either the right or the power to exercise the discretionary function of the town authorities. It is saying only this—that a court of equity will always seek to adjust the remedies it affords to what

appears to be the equities of the situation. See *City of Roswell v. Mountain States, etc., Co.,* (*C. C. A.*) 78 *F.* (Bd) 379.

7. Lastly it is urged against the bill that it attempts to have the Chancellor synchronize the time of removal of the defendant's distribution system with the completion of the plant and system of the grantee of the new franchise.

If that can be done without any disregard of the principles of law and equity that are applicable to the defendant's rights, there certainly can be no objection to the court's undertaking to accomplish it.

The question under this head is really directed to whether there is power in the court to require the defendant to continue its service in Seaford after its franchise has terminated. The complainant contends that there is such power, citing *Iowa Electric Light & Power Co. v. Town of Grand Junction,* 216 *Iowa,* 1301, 250 *N. W.* 136, and *Thompson on Corporations,* 1931 *Supp. p.* 571; and the defendant denies such power.

It is not necessary to pass on this point at the present stage of the case. It is raised because of a prayer in the bill. The demurrer is to the whole bill. A general demurrer to a bill which shows a sustainable case in equity, will not be sustained because of one objectionable prayer. Whether the particular prayer is an objectionable one is not decided.

The question of the details of the relief to be afforded, if and when a decree is entered, is a question that is not ripe for decision at the present. The same observation might have been made in answer to the sixth ground of demurrer.

An order will be entered overruling the demurrer.