# SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

January, 1919.

## MATTER OF CLARENCE H. KELSEY, HARRY L. THOMPSON AND HARRY H. HESS, Attorneys, BROOKLYN BAR ASSOCIATION, Petitioner.

(186 App. Div. 95.)

ATTORNEYS—CORPORATIONS—EMPLOYMENT OF ATTORNEYS BY GUARANTY COMPANY TO FORECLOSE MORTGAGES GUARANTEED BY IT IS NOT A VIOLATION OF PENAL LAW, § 280.

A title and credit guaranty corporation organized under and complying with the Insurance Law, does not violate § 280 of the Penal Law by employing attorneys to foreclose mortgages guaranteed by it. Such corporation is not thereby engaged in seeking legal business or offering to render legal services.

APPLICATION by Brooklyn Bar Association under Judiciary Law, section 88,* for such action as this court may decree proper, upon the charge made by the petitioner that the respondent attorneys have violated section 280 of the Penal Law.†

*Edward H. Wilson,* for the petitioner.

*Arthur E. Sutherland,* for the respondents.

KELLY, J.:

In Post v. Louis (184 App. Div. 533) we dismissed an

---

* Consol. Laws, chap. 30 (Laws of 1909, chap. 35), § 88, subd. 2, as amd. by Laws of 1912, chap. 253, and Laws of 1913, chap. 720.—[REP.

† Added by Laws of 1909, chap. 483, as amd. by Laws of 1916, chap. 254. —[REP.

appeal from an order made by the County Court denying an application made by the petitioner to intervene in the foreclosure action, and to dismiss said action because it was brought in contravention of section 280 of the Penal Law prohibiting the practice of law by corporations. This court held that the application of petitioner to intervene as *amicus curiae* in order to press the application to dismiss, was a matter addressed to the discretion of the County Court. Mr. Justice THOMAS said in his opinion: " There is no motion before this court to discipline an attorney. If there were, the court could pursue its established practice, and then the question of staying the attorney in his alleged unlawful practice could be considered. Even upon the facts now before it, this court could institute the usual proceeding. * * * It is deemed the better course in matters of discipline to follow the ordained methods, in the use of which this court usually depends upon the vigilance and faithful service of the petitioner."

It appears that the committee on unlawful practice of the law of the Brooklyn Bar Association, on November 11, 1918, preferred charges before the grievance committee of the association against the three attorneys respondents, identical with the charges made against them in this proceeding, and that the respondents appeared before such grievance committee on November eighteenth, with counsel, and filed an answer denying such charges; that after hearing, the committee unanimously dismissed such charges. This proceeding is, however, instituted by the association itself, the petition being verified by the secretary.

In United States Title Guaranty Co. v. Brown (166 App. Div. 688) this court affirmed a judgment of the Special Term, in which case the trial judge said (86 Misc. Rep. 287) : " The profession of the law, one of the oldest known to civilization, involving the most sacred confidence between man and man, with its past of high ideals and service to humanity, has in the

last quarter of a century suffered much from the inroads of the new financial and business methods in this great land of ours. Whether by ill-advised attempts by corporate employers to dominate and direct attorneys and counsel in the conduct of litigation, whether by so-called title companies or casualty insurance corporations, the old ideals in the relation of attorney and client, which meant so much to mankind, have suffered and have been threatened with demoralization. This is wrong. The loss of the individual personal relation involved in the attempt by corporations to practice law is so serious to the community that it is against public policy, and I am inclined to think *malum in se,* but, at any rate, there is no question that in this State it is unlawful by force of the statute. The agreement of the plaintiff and defendant and the plaintiff's agreements with the property owners seem to me to be flagrant violations of the law, and before a court of equity no skillfully framed wording of a corporate charter can be allowed to cover the wrongs or to make them legal."

We affirmed the judgment in an opinion by the presiding justice, holding that the agreements made by the plaintiff corporation in that case with third persons to undertake legal proceedings in their behalf to recover compensation for lands taken by the city of New York for the construction of the Ashokan Dam, were illegal — that the undertaking of the corporation — plaintiff was *mala prohibita* (Penal Law, § 280) ; and while the court held that the plaintiff in the case cited was entitled to an accounting by its attorney for moneys received, he said: "The plaintiff, for aught decided in this case, remains liable to the exclusive punishment prescribed by the statute. We affirm a judgment, not enforcing the prohibited contracts, but upon taking 'notice of the circumstances' and in the belief that 'justice and equity require a restoration of money' (Pratt v. Short, 79 N. Y. 445), and in consideration of public policy, in order to uphold the principle that a member

of the bar cannot invoke a violation of law in which he participated, for the purpose of retaining moneys, received by him in his professional capacity, which he agreed another should have and for which in justice and in equity he should account. (Irwin v. Curie, 171 N. Y. 414.) We cannot uphold him in his vindication of a law which he too broke, to the end that he should keep moneys which are not his own."

The statute (Penal Law, § 280) prohibits a corporation from practicing or appearing as attorney-at-law for any person öther than itself in any court in this State, or before any judicial body, or to make it a business to practice as an attorney-at-law for any person other than itself, or to render or furnish legal services or advice, or to furnish attorneys or counsel or to render legal services of any kind. The Legislature has clearly evidenced its intention not only in the general language referred to, but has particularized various acts and transactions as offending the prohibition, and this court in the case cited said through the presiding justice: "In Matter of Co-operative Law Co. (198 N. Y. 479, 484), when the court considered this statute, it determined that its purpose and effect are to preserve an ancient and honorable profession ' of the highest usefulness and standing,' one which ' involves the highest trust and confidence,' from the inroads of a legal entity that could neither qualify for practice nor discharge such personal obligations of trust and confidence, and which, either acting as a middleman, so to speak, between client and attorney, might destroy the relation of client and attorney, or, with its aggregated power, might affect the individual independence of the bar." There can be no question of the importance of the enforcement of the statute to the courts, to members of the bar, to litigants and to the public generally. But the case presented against the three attorneys, respondents, does not offend the law, because the prohibition is against a corporation practicing or appearing as an attorney-at-law for any person other than itself, and it is

expressly provided: " This section shall not apply to any corporation or voluntary association lawfully engaged in a business authorized by the provisions of any existing statute, nor to a corporation or voluntary association lawfully engaged in the examination and insuring of titles to real property, nor shall it prohibit a corporation or voluntary association from employing an attorney or attorneys in and about its own immediate affairs or in any litigation to which it is or may be a party." The Legislature has authorized the incorporation of the company which it is charged is the employer of the attorneys here accused; it has empowered the corporation to carry on the business of examining and guaranteeing bonds and mortgages and titles to real estate. (Insurance Law [Consol. Laws, chap. 28; Laws of 1909, chap. 33], art. 5, § 170, as amd. by Laws of 1913, chap. 215.) In the business thus authorized the company has guaranteed over 38,000 mortgages now outstanding, aggregating over $250,000,000, held by thousands of individuals, trustees and corporations throughout the United States and in foreign countries. By the Personal Property Law (Consol. Laws, chap. 41 [Laws of 1909, chap. 45], § 21, as amd. by Laws of 1918, chap. 544) and the Decedent Estate Law (Consol. Laws, chap. 13 [Laws of 1909, chap. 18], § 111, as amd. by Laws of 1918, chap. 544) these guaranteed securities are legalized as investments by trustees and executors. The company not only guarantees the payment of the principal and interest of the security, but agrees with the holder that it will collect the interest, retaining for itself whatever there is of interest in excess of the rate guaranteed, receiving in this way compensation for its guaranty, and this method of compensation is recognized by the statutes permitting trustees to pay one-half of one per cent out of the income received as consideration for the guaranty. The owner of the guaranteed security is insured by the company against any and all expense by reason of foreclosure proceedings. Now as long as this business is lawful and

conducted under the provisions of the statute, it seems idle to urge that section 280 of the Penal Law prohibits the company from doing the very thing authorized, because it is apparent that the business cannot be conducted unless the company thus guaranteeing the security is authorized to enforce the payment of the debt which it guarantees. In doing this, in the words of the statute, it is acting for itself. In employing the respondents it was "employing an attorney or attorneys in and about its own immediate affairs," and "in any litigation to which it is or may be a party." Aside from the obvious impracticability of conducting such business of guaranteeing mortgages of the proportion to which the business of this company has grown, in any other manner that under its own supervision, by attorneys known to it and upon whom it can rely for accurate and diligent service, the corporation has an actual interest in the mortgage debt. In Post v. Louis (supra) it appeared that the corporation had under the guaranty paid the semi-annual interest to the holder of the mortgage some months before the foreclosure suit was commenced, and it appears that this is the regular procedure on the part of the guarantor company. The holder of the mortgage need not be disturbed, because he or she holds not only the security but the guaranty of the company as well. The enforcement of the security is the immediate affair of the company. Indeed the corporation under its agreement with the security holder would be a proper party to the foreclosure suit. It might be joined as coplaintiff with the plaintiff, or it might be made a party defendant in any suit brought because of its interest in the debt. (Weinstein v. Sinel, 133 App. Div. 441; Robert v. Kidansky, 111 id. 475.) Under these circumstances it seems to us the employment of the respondent attorneys to foreclose the mortgages so guaranteed by the corporation is not in violation of the Penal Law. The corporation has a vital interest in the security which is the subject-matter of the action; it is the source to which the holder

looks for payment of principal and interest; it is entitled to subrogation to any rights possessed by the nominal holder, and as long as this method of doing business is permitted in this State, it cannot be said that the attorneys employed to represent the corporation in these cases of guaranteed mortgages are violating the law, or the ethics of the profession.

There is no denial in the case at bar that the respondents were practicing law in the various matters referred to by the petitioner. That was the disputed question in Matter of Pace (170 App. Div. 818); People v. Peoples Trust Co. (180 id. 494); People v. Title Guarantee & Trust Co. (Id. 648). It was held in the cases cited that a corporation is prohibited from practicing law, and from holding itself out to the public as being entitled to practice law, to render or furnish legal services or advice or to render legal services of any kind, and that attorneys of the court may not aid and abet a corporate employer in such illegal transactions. But the distinction between the cases cited and the matter now before the court is obvious. The guaranty company in the present case is not engaged in seeking legal business or offering to render legal services. The Legislature has authorized the corporation to engage in the business of guaranteeing these securities, and to incur liability by reason of such guaranties, and that is the business of the corporation here. It is not suggested that the corporation is guaranteeing mortgages for the purpose of foreclosing them or engaging in litigation concerning them. Its lawful profits depend in the regular course of business upon the payment by the mortgagor of his obligations without litigation. The right of the corporation to enforce the obligation is a secondary matter necessarily attached to its legal right to carry on its business if it is to avoid loss upon its contracts legally made. The right of insurers to thus protect themselves by actions in the name of the insured has always been recognized. (May Ins. [4th ed.] § 454 and cases cited.) We are passing

upon the particular case presented to us.    Other cases in the Courts of Special Sessions and the Magistrates' Courts arising out of other circumstances and transactions are referred to in the petitioner's points; we express no opinion on these cases. The law is salutary, reasonable and proper.    The case here presented against the respondents is not within the statute and is also expressly excepted from its operation.    The action of the grievance committee of the Bar Association in dismissing the charges was entirely justified and this application must be denied, but without costs.

MILLS, RICH, PUTNAM and JAYCOX, JJ., concurred.

Application denied, without costs.