272

Common Pleas Court of Hamilton County.

GOODMAN V. WESTERN BANK & TRUST COMPANY.

Decided February 20, 1931.

*Sol Goodman,* and *Roy L. Struble,* for plaintiff.
*Peck, Shafer & Williams,* for defendant.

*Philip Roettinger,* filing a brief, *Amicus Curiae,* in support of the contention of plaintiff.

ALFRED MACK, J.

This cause has been argued and submitted upon a general demurrer to the amended petition.

Such amended petition alleges that plaintiff is an attorney duly admitted to practice in the state of Ohio and that he has so practiced for more than one year and that he brings this suit on behalf of himself and all others similarly situated. It is alleged that, as an attorney at law, plaintiff "has an exclusive franchise as one of a class to practice law," which franchise was granted to him by the Supreme Court of Ohio as provided by law. It is alleged that laymen and corporations cannot and are expressly forbidden to practice law in this state either directly or indirectly.

After setting forth various matters in or by which it is claimed that defendant is engaged in the practice of law, it is alleged expressly that defendant "holds itself out as capable of practicing law and solicits employment therefor."

It is alleged that plaintiff "and all others similarly situated will sustain irreparable damage in that the standing of their profession will be materially lowered and otherwise" unless defendant is enjoined from engaging in the practice of law, and that plaintiff has no remedy at law.

Plaintiff prays that defendant and its officers be enjoined "from interfering with a franchise granted plaintiff by the Supreme Court of Ohio, and from engaging in the practice of law, either directly or indirectly in any form or manner whatsoever" and for all other proper relief.

By the general demurrer it is admitted for the purpose of testing the sufficiency of the petition that defendant is engaged in the practice of law.

Matters involved herein were presented to the Court of Common Pleas of Cuyahoga county, Ohio, in two cases, both determined adversely to the contentions of defendant in the instant case. First of such cases is that of *Dworken* v. *Apartment House Owners' Association of Cleveland,* decided June 26, 1930, by Judge Overmyer, sitting by

designation in Cuyahoga county, and reported in 28 N. P. (N. S.), 114, Ohio Law Bulletin, July 21, 1930. Second of such cases is *Dworken* v. *National Automobile Service Corporation,* reported in 3 Ohio State Bar Association Reports, page 492, in which there is no opinion, but wherein is set forth a decree entered by Judge Kennedy, January 12, 1931.

Such former case is now pending in the Court of Appeals on appeal. In the instant case, the court has been furnished with copies of brief filed in such court in opposition to the injunction proceeding. This court has also had the benefit of able arguments of counsel and additional briefs filed by them in the instant case.

While the decisions of courts of co-ordinate jurisdiction are not binding, nevertheless, they are persuasive. In view, however, of the great importance of the matter, this court has itself investigated and considered the matters involved herein. As main grounds in support of the demurrer it is claimed:

First. That admission to the Bar and the right to practice law is not a property right.

Second. That equity will not restrain the violation of a penal statute.

Third. That the proper proceeding to prevent defendant from engaging in the practice of law is one to enforce the penalty prescribed in General Code of Ohio Section 1698-1, or by Quo Warranto.

Fourth. That in the absence of an injury to property rights or special damage to plaintiff, a Court of Equity will not grant the relief sought herein.

Fifth. That if this court entertains jurisdiction herein, defendant will be deprived of its right to trial by jury.

### 1.

What is the nature or character of the right to practice law? Obviously it is not a contract right. Likewise, it must be admitted that it is not property in the sense that attaches to the ownership of realty or personalty. It may also be conceded that it is not a franchise in the strict

sense that such term is used with relation to charter rights or grants to corporations. The learned Justice Field in the celebrated case *Ex Parte Garland,* 4 Howard, 333, speaking for the Supreme Court of the United States, defines the nature of the right conferred upon attorneys by their admission to the bar, and his opinion has been adopted almost universally by the courts of this country. (See 6 Corpus Juris, page 568, note 22.)   He says:

"They are officers of the court, admitted as such by its order, upon evidence of their possessing sufficient legal learning and fair private character.  *  *  *  They hold their office during good behavior, and can only be deprived of it for misconduct ascertained and declared by the judgment of the court after opportunity to be heard has been afforded.  Their admission or exclusion is not the exercise of a mere ministerial power.  It is the exercise of judicial power and has been so held in numerous cases.  *  *  * The attorney and counsellor being, by the solemn judicial act of the court, clothed with his office does not hold it as a matter of grace and favor.  The right which it confers upon him to appear for suitors and to argue causes is something more than a mere indulgence revocable at the pleasure of the court or at the command of the legislature. It is a right of which he can only be deprived by the judgment of the court, for moral or professional delinquency."

In the case of Co-operative Law Company, 198 N. Y., 479, page 483, the Court of Appeals of New York thus defines the right to practice law, viz.:

"The right to practice law is in the nature of a franchise from the state conferred only for merit.  It cannot be assigned or inherited but must be earned by hard study and good conduct.  It is attested by a certificate of the Supreme Court and is protected by registration.  No one can practice law unless he has taken an oath of office and has become an officer of the court, subject to its discipline, liable to punishment for contempt in violating his duties as such, and to suspension or removal.  It is not a lawful business except for members of the bar who have complied with all of the conditions required by statute and the rules of the courts."

Requirements by this state, of professional ability and an oath for the performance of duties according to pro-

fessional ethics, as a prerequisite to the right to practice law, will be found in early territorial legislation.

The law of August 1, 1792 (Territorial Laws 1792, pages 40 and 41) requires a "good and moral character," "an examination of his professional abilities before one or more of the territorial judges" and also a certificate of "proper abilities and qualifications" and an oath in open court. Such law also provided "that where there shall be only two attorneys attending the court in any of the counties of this territory neither the plaintiff nor defendant shall be allowed more than one."

Differing from other learned professions in the important feature that members of the legal profession are officers of the judicial branch of government, there are other features which should not be overlooked. Not only are attorneys subject to the disciplinary power of the court but they are subject to the call of the court in the defense of the indigent accused, subject to its orders in the matter of investigation of conduct of other members of the profession and in the preservation of the dignity of the court. No such characteristics attach to any other of the learned professions.

While it is true that in the provisions of the law with relation to the admission of attorneys there is a design "to protect the community from the consequences of a want of professional qualifications, and to benefit the public by enabling the profession to acquire professional merits" nevertheless, such design is not restricted to the legal profession.

As is pointed out by Judge Lane, in the early case of *Jordan* v. *Overseers of Dayton,* 4 Ohio, 294, "a large portion of the duty of the lawgiver, in every civilized community, consists in regulating the conduct of individuals in different matters, for purposes of general welfare. Some acts of this nature are the objects of penal legislation." At page 309, various regulations with relation to various kinds of business and professions are pointed out.

In the opinion of this court the admission of an attor-

ney to practice law confers upon him a right to reap the privileges and emoluments of his office, in competition with other members of the profession, free from competition of others, not such officers of court and not subject to its discipline or orders.

In the opinion of the court, this right is in the nature of a franchise or in the nature of a property right, as valuable to the possessor thereof as a franchise or property is to the owner, and the holder thereof is entitled to the same protection as the owner of such franchise or property.

## 2.

As to the objection based on the rule that equity will not restrain the violation of a penal statute, the rule is not so broad. The proper expression of the rule is, that in the absence of an injury to property rights or rights of a pecuniary nature equity will not interfere. There are cases where relief is granted in a Court of Equity, although the acts restrained are of a criminal nature. (See High on Injunctions, Fourth Edition, Sec. 20-A and cases cited.)

In the celebrated case *Re Debs*, 158 U. S., 564, Justice Brewer, speaking for the entire court said at page 593:

"There must be some interferences, actual or threatened, with property or rights of a pecuniary nature, but when such interferences appear the jurisdiction of a court of equity arises and is not destroyed by the fact that they are accompanied by or are themselves violations of the criminal law."

Our own Supreme Court in *State of Ohio* v. *Capital City Dairy Co.*, 62 Ohio St., 123, 126, recognizes that there are cases in which a Court of Equity lends its aid by injunction to restrain the violation of penal statutes or the commission of criminal acts. In *Renner Brewing Co.* v. *Rolland*, 96 O. S., 432, at page 441, the court said:

"It is further contended that injunction is not the proper remedy to compel obedience to the penal laws of the state. That of course is true, but the fact that wrong-

ful interference with another's property may constitute a penal offense is no reason for refusing a writ, if the plaintiff for other reasons is entitled to the same."

The right to enjoin the commission of a "nuisance" has always been recognized and while it is true that the term has been characterized as incapable of definition so as to fit all cases, nevertheless, the term is applied to a class of wrongs arising from unlawful personal conduct producing such material annoyance, inconvenience or hurt that the law will presume a consequent damage. (See 46 Corpus Juris, pages 645 and 646.)

Whether the acts complained of in the instant case may be characterized as a "nuisance" it is not, in the opinion of the court, deemed necessary to determine.

## 3.

Under the provisions of Section 1698-1, General Code, the penalty for practicing law by one not licensed as an attorney is that the offender "shall upon conviction be fined not less than Twenty-five Dollars nor more than Five Hundred Dollars." By the terms of this law there is neither any provision for the prevention of a continuance of such unlawful acts, nor is there any additional penalty prescribed for the repetition of the prescribed acts. It would therefore seem to follow that the enforcement of the penalty prescribed by this law is not such an adequate legal remedy for the prevention of the offense as is a prerequisite to denying the exercise of equitable jurisdiction.

Our Supreme Court in answering an objection that the remedy to prevent an illegal act was by criminal prosecution said:

"It is enough to say of this objection that the remedy is not adequate. The object of the statute is to protect the public. In the nature of things, the small fine is not a sufficient deterrent to accomplish the desired good especially in the case of a company possessed of ample means to conduct a large business." (*State* v. *Dairy Co.*, 62 Ohio State, 350, 366.)

It is suggested that if defendant corporation is exercising a right in contravention of law a proceeding in Quo Warranto may be brought against it under the provisions of Section 12304, paragraph 4, General Code. Under the practice, where the corporation is carrying on its authorized business but is in addition thereto exercising a right in contravention of law, the court in its sound discretion may make an order ousting the corporation only from the exercise of the prescribed right. (*State* v. *People's Mutual Benefit Association*, 42 Ohio State, 579.)

As in the case of an ordinary judgment in a common law action there is no provision for enforcing such judgment except by the ordinary processes of law which may be ineffectual. Our statutes have not made any express provision for the enforcement of an order of ouster in a Quo Warranto proceeding. In some states such express provision is made. For example, in the state of Iowa by the provisions of its Code 1927, Section 1249, it is provided that any person who, without good reason, refuses to obey an order of the court in a Quo Warranto proceeding shall be guilty of contempt and fined in a sum not exceeding Five Thousand Dollars, and imprisoned in the county jail until he complied therewith, and shall be further liable for damages resulting to any person on account of his disobedience.

*Gano* v. *State*, 10 Ohio State, 237, and *Dale* v. *State*, 15 Ohio State, 137, illustrate the restrictions of a proceeding in Quo Warranto. These cases declare that although the court has power in such proceeding to oust a usurper from office, yet it cannot in such proceeding induct into office the rightful occupant nor determine his right thereto.

In the opinion of this court a Quo Warranto proceeding would not afford such adequate remedy as is a prerequisite to the denial of the exercise of equitable jurisdiction.

We should not forget that the Constitution of Ohio expressly recognizes five of the six well known extraordinary writs, viz.: Quo Warranto, Habeas Corpus, Mandamus, Prohibition and Procedendo. The sixth writ "*Ne Exeat*" is not mentioned.

In the recent case of *State, ex rel. Juhlman,* v. *Conners et al.,* 122 Ohio St., 334 (171 N. E. Reporter, 590), our Supreme Court in a Per Curiam opinion, concurred in by all the judges said:

"The writ of mandamus is an extraordinary writ, and will not be issued as a substitute for an existing, adequate and available remedy in equity or in law, but only where such remedy, in equity or in law, does not exist, is not adequate, or is not available."

It would seem therefore to follow that the same rule should be applied to the extraordinary writ of Quo Warranto.

### 4.

That plaintiff on behalf of himself and others similarly situated has such right as entitles him to protection in a Court of Equity, is in the opinion of this court illustrated by principles announced by eminent courts. In *New Method Laundry Co.* v. *McCann,* 174 California, 26 at 31, the court says:

"This right of a citizen to pursue a calling, business, or profession, he may choose, is a property right to be guarded by equity as zealously as any other form of property."

In *Fisher* v. *Star Co.,* 231 N. Y., 414 at 428, the court says:

"Any civil right not unlawful in itself nor against public policy, that has acquired a pecuniary value, becomes a property right that is entitled to protection as such. The courts have frequently exercised this right."

In *New Orleans* v. *Liberty Shop,* 157 La., 26, the court says:

"An injunction should not be issued to prevent the commission of a crime, if the only reason for preventing it is that it is a crime. But if the wrong complained of is injurious to property or civil rights, or if it is a public nuisance, either in the opinion of the court or in virtue of a statute or an ordinance making it a nuisance, the fact that it is also a violation of a criminal statute or ordinance does not take away the authority of a court of civil jurisdiction to prevent the injury or abate the nuisance."

### 5.

As to the objection that if this court entertains jurisdiction herein the defendant will be deprived of its right to a trial by jury, it is sufficient to point out that it is not sought by this proceeding to try or punish defendant for a violation of Section 1698-1, General Code, or any other provision of law. It is obvious that if such objection is tenable none of the numerous proceedings could have been maintained wherein Courts of Equity have enjoined the commission of acts notwithstanding there was a punishment or penalty for the same:

### CONCLUSION.

In view of the opinion of this court as hereinbefore expressed it has not been deemed necessary to discuss or distinguish the cases cited by counsel for defendant. In the opinion of the court the conclusions reached by the two judges in the cases determined in the Court of Common Pleas of Cuyahoga county are based upon sound principles. The demurrer to the amended petition will therefore be overruled and an order may be entered accordingly.