HERMAN WOLLITZER, Plaintiff, *v.* NATIONAL TITLE GUARANTY COMPANY, Defendant.

HERMAN WOLLITZER, Plaintiff, *v.* TITLE GUARANTEE AND TRUST COMPANY and Another, Defendants.

Supreme Court, Queens County, July 27, 1933.

*Frank A. Bellucci*, for the plaintiff.

*William Wolfman [Raphael H. Weissman* of counsel], for the defendant National Title Guaranty Company.

*C. Elmer Spedick*, for the defendants Title Guarantee and Trust Company and Bond and Mortgage Guarantee Company.

CROPSEY, J. The actions are similar in character. In each the plaintiff seeks to enjoin the defendants from practicing law. The prayer for relief also asks that defendants be punished as for contempt of court, but the plaintiff's brief indicates that he is not seeking that relief.

The defendants answered the complaints and then moved for judgment dismissing the actions on the ground that the complaints did not set forth a cause of action. In support of this the defendants make two contentions: *First* that no acts are alleged which constitute the practice of law, and *second,* that even if such facts were alleged plaintiff does not show that he has been specially damaged and so may not maintain the actions for injunctive relief.

The complaints allege that the plaintiff is a citizen of the United States and a resident of the county of Queens in the State of New York and was duly licensed to practice law in this State and is a member of the bar in good standing; that the practice of law is not a business open to all but is a beneficial right limited to a few persons of good moral character, with special qualifications, both general and professional, ascertained and certified after a long course of study by the State Board appointed for the purpose; that the practice of law is not a lawful business except for members of the bar who have complied with the conditions imposed and is in the nature of a franchise from the State; that each of the defendants is a title insurance and mortgage corporation, organized under the laws of this State and, in addition to conducting a title insurance business, carries on the business of selling bonds and mortgages secured by liens against real property; that the defendant is not a duly licensed person entitled to practice law in this State

and is expressly prohibited by statute from so doing; that the defendant "under the subterfuge" of effecting extensions of the payment of the principal sums secured by bonds and mortgages which it had guaranteed and insured, "draws and prepares all legal papers incidental thereto and exacts fees therefor," all contrary to law, and which constitutes the practice of law; that all of the fees and charges made by the defendant, as above stated, are in no way made known to the owners of the bonds and mortgages and that the defendant prepares "all legal papers connected therewith," and that such fees and charges are retained by the defendant, who, because of the acts alleged, unlawfully practices law; that the defendant, in violation of law and of the rights of the plaintiff, actively engages in the practice of law by engaging attorneys at definite salaries, who are hired and discharged at the will of the defendant, and are at all times under its direction and control, and that said attorneys prepare "all legal documents for and in behalf of said defendant, defend and prosecute suits for and against the said defendant," and "because of this practiced subterfuge, namely, the hiring of attorneys to act for it and in its behalf," all of the acts so committed constitute practicing law; that the defendant conducts all of its foreclosure actions under the name of the person to whom the payment of the mortgages has been guaranteed and "for that purpose engages attorneys at weekly salaries to conduct all of its legal proceedings," the attorneys being hired and discharged at the will of the defendant and being at all times under its direction and control; that the costs derived from the conduct of those actions become the property of the defendant; that all of those acts so committed by the defendant constitute the practice of law; that an attorney owes undivided loyalty to his client, "unhampered by the destructive influence of obligations to a corporation or any other employer," and that "while under the subterfuge of employing such attorney" the defendant, aided and abetted by such attorney, practices law unlawfully; that the defendant, through its agents, solicits applications for titles and pays a broker's commission to persons who are not legally entitled to them and who act for the defendant in obtaining such applications; that defendant "holds itself out and does, without right or authority, prepare contracts, deeds, mortgages and other legal papers;" that in performing the acts alleged defendant is practicing law; that the payment of commissions for obtaining applications for the examination of titles is an inducement to laymen to get people to file their title applications directly with the defendant, "who incidentally prepares all legal papers connected therewith, renders legal opinions as to the marketability

or unmarketability of title, and performs all legal acts appertaining thereto," all of which constitute practicing law; that the defendant employs attorneys who are at all times under its control and pays them weekly salaries " to conduct and pass upon all manner of legal proceedings, advise in the drawing of agreements and preparing papers connected therewith; drafting legal documents of all kinds, including the preparation of pleadings, etc., and that all fees connected or arising therefrom are collected and retained by this defendant," and that all of those acts constitute practicing law; that " under the subterfuge practiced by this defendant, namely, by the employment of duly licensed attorneys," all of the acts complained of in the complaint are committed by the defendant and because of such commissions defendant is engaged in the practice of law; that the plaintiff as an attorney at law has established a practice and earns a livelihood therefrom and because of the encroachment of the defendant on his rights, " the business of this plaintiff has greatly suffered " and defendant has violated the laws and Constitution of the State by actually practicing law " illegally and without a right," and that there is no plain, adequate and complete remedy at law.

The plaintiff seeks an injunction restraining the defendant from performing any act relating to the practice of the profession of the law, from hiring any attorney at law to act for or on behalf of any client of the defendant and from drawing legal documents of any kind or giving advice incidental thereto, and that it be adjudged in contempt of court.

In the second action there is a further allegation that the defendants also act as executors, guardians and trustees and for that purpose they prepare trust agreements and all legal papers and render all legal services " incidental thereto."

Neither of the complaints states that the defendants are doing any act which they are not permitted to do by statute. A summary of the allegations will make this plain. It is alleged that the defendants draw and prepare papers for extensions of mortgages of which they have guaranteed the payment. The statute applicable to title insurance companies (Insurance Law, § 170) expressly permits them to guarantee the payment of bonds and mortgages. The drawing of papers in connection therewith is a necessary incident and is not a violation of the law whether it is done with or without the aid of a lawyer. (*People* v. *Title Guarantee & Trust Co.*, 191 App. Div. 165; affd., 230 N. Y. 578.) It is a fact that corporations are prohibited from practicing law and the punishment for so doing is prescribed by section 280 of the Penal Law, and by section 271-a of the same law none but

lawyers are permitted to draw certain papers. But it is likewise a fact that each of those sections contains a clause excepting from its operation corporations such as the defendants and expressly permitting them to employ attorneys in and about their own immediate affairs and in litigation to which they are parties and to draw papers affecting real property and necessary for and incidental to the examination and insuring of titles and the making of loans.

It alleges that defendants conduct foreclosure actions in the name of the holders of guaranteed mortgages and that lawyers are hired by them to conduct such cases. In so doing the defendants do not violate the law. (*Matter of Kelsey*, 186 App. Div. 95.)

It alleges that the defendants solicit applications for title insurance and prepare contracts, deeds and mortgages in connection therewith and render legal opinions as to the marketability of the title. Title insurance is expressly permitted by the statute. Insuring a title necessarily involves the determination whether, as a matter of law, it is insurable. This the defendants have a right to do. (*Title Guarantee & Trust Co.* v. *Maloney*, 165 N. Y. Supp. 280.)

It alleges that the defendants hire lawyers who are under their control to pass upon all manner of legal proceedings and give advice in drawing papers. While this language is quite general, it is a necessary inference from a reading of the whole complaint that this applies only to matters connected with the defendants' business. It is not suggested in the complaint that the lawyers are hired for any other purpose. The whole complaint must be considered in determining the meaning to be given to any of the allegations. (*People* v. *Title Guarantee & Trust Co.*, 227 N. Y. 366.)

The allegations in the complaint that the defendants did certain acts " under subterfuge " add nothing. What is claimed to be the subterfuge is apparent. It is that the defendants were doing the acts specified through lawyers hired by them. This is not a subterfuge as defendants have the right to hire lawyers to do law work that is necessary or incidental to the carrying on of their business. But even if what was evidently intended by the reference to subterfuge was not so plain, still such an allegation would not be helpful to the plaintiff, as there is no fact or specification to support it. General allegations of fraud, or conspiracy, or similar charges, are not good even as a pleading. The acts themselves must be set forth. (*Wood* v. *Amory*, 105 N. Y. 278, 282; *People* v. *O'Brien*, 209 id. 366, 374.) Neither complaint, therefore, alleges a cause of action.

But if the complaints were otherwise sufficient they should be

dismissed because the plaintiff has no right to the relief sought. It is very generally held that the violation of a statute does not give any right to an individual to obtain an injunction against the continued violation unless he shows that he has been specially damaged. (32 C. J. 47; 26 id. 1046.)

What it is necessary for the plaintiff to show in order to get relief in equity is illustrated by the following cases: *Callanan* v. *Gilman* (107 N. Y. 360); *Wakeman* v. *Wilbur* (147 id. 657); *Cranford* v. *Tyrrell* (128 id. 341); *Brooklyn City Railroad Co.* v. *Whalen* (191 App. Div. 737; affd., 229 N. Y. 570). In these complaints plaintiff sets forth no special damage, the only allegation being that his practice " has greatly suffered."

In *Smith* v. *Lockwood* (13 Barb. 209) the plaintiffs sought to enjoin the defendants. The plaintiffs were sawmakers. Their complaint alleged that their wages were lowered because saws that were manufactured in the State prison at Sing Sing came in competition with the saws that they manufactured and that the manufacture of the saws in the prison was in violation of the statute. The court held that the plaintiffs were not entitled to any relief. It held that the statute was designed for the public good and that plaintiffs could not succeed because they had failed to show that they were specially damaged. The complaint alleged that the lowering of wages applied not only to the plaintiffs but to others pursuing the same trade in the State and the court held that the allegation in no way aided the plaintiffs. The court stated that no case had been found where an injunction was issued on the application of an individual to prevent the perpetration of an act prohibited by a public statute " merely because it might diminish the profits of a trade or business pursued by the applicant in common with a considerable class of his fellow-citizens, although the statute may have been designed principally for the protection of the interests of such class." In that case the plaintiffs sued on their own behalf as well as on behalf of all other saw-makers having an interest in common with them. Notwithstanding, the decision was as stated. In the instant case this plaintiff sues in similar form. It is also a fact that no other plaintiff has joined with him in either of these actions.

Apparently in this jurisdiction there are no authorities holding that an attorney may or may not enjoin the illegal practice of law by others. There are, however, decisions in cases which are analogous. A certified public accountant, who could become such only under the provisions of the General Business Law, sued to restrain the defendant from publishing advertisements of other people who purported to be such certified accountants but who

in fact were not. The court denied him relief because it was not shown that his business was injured. (*Goldsmith* v. *Jewish Press Publishing Co.*, 118 Misc. 789.) The court there said (p. 791): " Though the value to him [plaintiff] of his title may be diminished if others continue to use it without right, yet it is not shown that through such continued user any business to which he personally is particularly entitled is wrongfully withdrawn, and even the value of the title itself to him is problematic and must to a great extent depend upon his own personal ability to obtain and retain clients. He is entitled to demand that the law be enforced in the manner directed by the legislature, but he shows no personal right and no personal injury which would permit a court of equity to grant an injunction."

In an action brought against the Superintendent of Banks by individual stockholders of a bank to recover damages because of the failure of the defendant to perform certain acts imposed by statute it was held that, although the defendant owed the general duty to all the stockholders of the bank to do what the statute required, he did not owe any specific duty to the plaintiffs and, therefore, the latter were not entitled to recover. (*Walker* v. *Broderick*, 141 Misc. 391.)

In *Fort Plain Bridge Co.* v. *Smith* (30 N. Y. 44) plaintiff had built a bridge over the Mohawk river under a franchise granted by the Legislature. This was a toll bridge for public use. Later, the defendants, without any legislative authority, erected another bridge over the same river within fifty feet of plaintiff's bridge. The defendants' bridge was a free one. The court held that the defendants had no right to erect their bridge, but that, nevertheless, plaintiff was not entitled to an injunction, because, although the tolls to the plaintiff might be less, it was not shown that it was damaged in its use of the river.

There are cases in other jurisdictions upholding the same principle. Among others, reference may be made to those holding that tradespeople may not enjoin competitive dealers from keeping their businesses open on Sunday in violation of the law. (*Motor Car Dealers' Association* v. *Haines Company*, 128 Wash. 267; *York* v. *Ysaguairre*, 31 Tex. Civ. App. 26.)

In the opinion in *Matter of Dolphin* (240 N. Y. 89) there is anguage which tends to support the defendants' contention in the instant cases. That proceeding was one to disbar an attorney. The only question considered in the Court of Appeals was as to the right of the bar association to appeal from a decision of the Appellate Division which dismissed the proceeding. The Court of Appeals held that there was no such right of appeal by the

association. In arriving at this conclusion, the court said that the interest of the association was of a general character such as might be shared by every member of the profession and that " it is not such a specific, personal and legal interest as makes the association a party legally aggrieved within the meaning of our statutes."

The plaintiff cites no authority in this State. He cites a number of decisions in other jurisdictions, some of which seem to have no bearing upon the points involved. There are, however, in Ohio some decisions which support plaintiff's contention, and it is quite evident that the complaints in these actions are based upon those decisions.

Plaintiff also stresses the fact that in one of its opinions the Court of Appeals says that the right to practice law is " in the nature of a franchise from the state." (*Matter of Co-Operative Law Co.*, 198 N. Y. 479, 483.) The plaintiff has the right to practice law. But whether the right be called a franchise, or, as the Court of Appeals has said later, " a privilege burdened with conditions " (*Matter of Rouss*, 221 N. Y. 81, 84; *People ex rel. Karlin* v. *Culkin*, 248 id. 465, 470) seems to be immaterial. The question in this connection is whether he has the right to come into equity to seek an injunction against one who is practicing law illegally. If that can be done in an action against a corporation, of course it can be done in an action against an individual.

The Ohio cases which have passed upon this question favorably to plaintiff's contention are the following: *Dworken* v. *Department House Owners Association* (28 Ohio Nisi Prius [N. S.] 115; affd. *sub nom. Dworken* v. *Apartment House Owners Association*, 38 Ohio App. 265); *Dworken* v. *Cleveland Automobile Club* (29 Ohio Nisi Prius [N. S.] 607); *Dworken* v. *Title Guarantee & Trust Co.*; *Dworken* v. *Land Title Abstract Co.*; *Dworken* v. *Cuyahoga Abstract Title & Trust Company* (reported in *Daily Legal News* of Cleveland, Ohio, August 29, 1932); *Goodman* v. *Western Bank & Trust Company* (28 Ohio Nisi Prius [N. S.] 272); *Taylor* v. *New System Prosthetic Dental Laboratory* (29 id. 451). In rendering the decisions in the above cases the court seemed to have laid great stress upon the fact that plaintiff had an exclusive franchise, and in the first decision (28 Ohio Nisi Prius [N. S.] 115, *supra*) the court said (p. 121): " The wrongs and illegal practices complained of are an invasion of the franchise enjoyed by the plaintiff and all other regularly admitted attorneys at law practicing at this bar, and no special loss or damage to the plaintiff need be shown." The case did not contain the proof of any special injury to the plaintiff. In affirming the decision at Nisi Prius, the appellate court (38 Ohio App. 265, *supra*) said (p. 275) that the plaintiff had an interest

" in the nature of a property right," and, therefore, could maintain the action although he failed to show any special injury.

In *Dworken* v. *Cleveland Automobile Club* (*supra*, at p. 617) the court again stressed the fact that plaintiff had a franchise and held that a court of equity would protect him just as it would protect a franchise to operate a ferry. (It will be recalled that the Court of Appeals of New York [*Fort Plain Bridge Co.* v. *Smith, supra*] held that a franchise to maintain a toll bridge would not be protected in equity.) The Ohio decision went on much the same ground as the prior ones; the court, in considering that special damage to the plaintiff was not essential to his proof, said (p. 618): " The individual who possesses such right is the owner and holder of a franchise and may maintain an action for the protection of the right; and the remedy for its unlawful invasion is by way of injunction."

The report in the *Daily Legal News* was of three cases decided in the Court of Appeals of Cuyahoga county, Eighth District, Ohio. Those appeals came on from decisions of the Common Pleas court and were heard *de novo*. The court below had held that certain things done by the defendants constituted the practicing of law and also that the plaintiff could come into equity to have the doing of those acts restrained. The appellate court did not discuss the right of the plaintiff to maintain such actions, possibly because of its prior decision in *Dworken* v. *Apartment House Owners Association* (38 Ohio App. 265) and merely determined that certain acts of the defendant constituted the practicing of law. For the benefit of those who may be interested in that question, the decree of the appellate court will be found printed in full in the *Daily Legal News* of Cleveland, Ohio, September 27, 1932. The other cases follow the same general lines, one of them being an action by a dentist. (*Taylor* v. *New System Prosthetic Dental Laboratory, Inc., supra*.) In reaching their conclusions the courts sought to distinguish an earlier case in an appellate court in Ohio (*Merz* v. *Murchison*, 11 Ohio Cir. Ct. 458). There a doctor sought an injunction against the defendant, who was practicing medicine without a license. The court held against the plaintiff although the latter urged that the right to practice medicine was a property right, just as was urged, but with more success, in the later cases. In so deciding the court cited with approval *Smith* v. *Lockwood* (13 Barb. 209, *supra*). None of the Ohio decisions is by the highest court of the State although plaintiff so claims. The appellate court mentioned is an intermediate one. The question, so far as is known, has not been passed upon by the Supreme Court — the highest court in that State.

The principle underlying the Ohio decisions does not seem to

find support in this State.   Whatever holding be made as to actions by lawyers, should also be made in actions by dentists (as the Ohio courts did), by doctors, by certified public accountants, and by all others who are licensed to carry on their profession pursuant to statute.   None of these persons, so far as examination has revealed, has ever obtained an injunction in this State against the illegal practice of the particular profession by some one else.   In cases where the question has been raised injunctive relief has been denied.   The fact that it seems not to have been undertaken more frequently is in itself evidence that it is commonly believed that such rights of action do not exist.   This is of special significance as applied to the legal profession.   The trend of the decisions in the State of New York, as shown by those already mentioned, is against the granting of injunctive relief to prohibit the violation of a statute unless the person suing establishes special injury or damage.   The plaintiff in the instant cases has not done that. He is, therefore, not entitled to maintain the actions.

The motions to dismiss the complaints are granted, with ten dollars costs in each case.   The motion to examine the defendants in the second action is denied.