122 A.2d 424 (1956)
DELAWARE OPTOMETRIC ASSOCIATION, a corporation of the State of Delaware, and William W. McCoy, Alfred J. Majeski and Harold I. Moss, Plaintiffs,
v.
Paul W. SHERWOOD and Ruth Sherwood, trading as Cavalier & Co., and Edwin P. J. Kuhwald, Defendants.
Court of Chancery of Delaware, New Castle County.
April 27, 1956.
*425 Thomas Herlihy, Jr., and Morris Cohen, Wilmington, for plaintiffs.
H. James Conaway, Jr., Wilmington, for defendants, Paul W. Sherwood and Ruth Sherwood, trading as Cavalier & Co.
Henry A. Wise, Jr., and Thomas J. Healy, Jr., Wilmington, for defendant, Edwin P. J. Kuhwald.
MARVEL, Vice Chancellor.
Plaintiffs seek a permanent injunction against those activities of defendants which have to do with the fitting of contact lenses to the human eye. They contend that defendants are practicing[1] optometry as that profession or occupation is defined in Chapter 21 of Title 24, Del.C.[2] Plaintiffs concede that § 2117 of Title 24 permits defendants to fill prescriptions for conventional spectacles or eyeglasses, but charge *426 that in fitting so-called contact lenses to the human eye, defendants, who are admittedly not licensed to practice optometry, are encroaching on a field which the Legislature has reserved for optometrists and doctors of medicine. At trial, plaintiffs introduced evidence which they contend establishes the fact that defendants in providing customers with contact lenses have dealt improperly with the human eye.
It is implicit in plaintiffs' case that it is impossible for an optician legally to fit a customer with contact lenses even when the formal prescription for such glasses is furnished by a doctor of medicine who thereafter maintains indirect supervision of the actual fitting. According to the evidence introduced by plaintiffs, an optician must not only examine the eye and determine its refractive powers and anomalies but must otherwise deal directly with the human eye in ways permitted only to doctors of medicine and optometrists in order to fashion[3] contact lenses which not only correct sight deficiencies but are also reasonably comfortable to wear.
At the conclusion of plaintiffs' case, defendants moved to dismiss and because defendants' motions questioned this Court's jurisdiction to grant injunctive relief on the basis of the facts adduced in plaintiffs' case, trial was suspended pending disposal of the motions under Rule 41(b), Rules of Court of Chancery, Del.C.Ann.
Sec. 2119 of Chapter 21, Title 24, Del.C. provides that the Attorney General shall prosecute for violations of provisions of the chapter and that any person found guilty shall pay a fine of not less than $100 nor more than $500. In default of payment of fine an offender may be imprisoned not less than one year. Defendants contend that if they have in fact violated any of the statutory provisions regulating the practice of optometry, plaintiffs have the right to demand that defendants be prosecuted and that this method of bringing defendants to account for their alleged offenses (a method which plaintiffs have not invoked) constitutes an[4] adequate remedy at law. Defendants further contend that even if plaintiffs had established that the criminal sanctions of Chapter 21 are not a sufficient remedy for the matters complained of, there has been no showing that plaintiffs as optometrists have a franchise or property right entitled to injunctive protection.
Plaintiffs in reply cite cases from a number of states including Pennsylvania, Ohio and South Carolina in support of the view that even where criminal sanctions are available the public and the licensed optometrist are entitled to be protected by injunction against the activities of those practicing optometry without a license. In certain of these[5] cases, such as Neill v. Gimbel Bros., 330 Pa. 213, 199 A. 178, it does not appear that the court's power to enjoin was questioned; in others, however, most clearly in Ezell v. Ritholz, 188 S.C. 39, 198 S.E. 419, and Seifert v. Buhl Optical Co., 276 Mich. 692, 268 N.W. 784, it was decided that not only does the public welfare require that optometry not be practiced on a non-professional and commercialized basis but that such profession is a calling in which duly qualified optometrists have a property right entitled to be *427 protected by injunction from unfair trade practices injurious to their interests.
It is established in Delaware that whether or not a nuisance is technically a crime, this Court may[6] enjoin a continuing nuisance which affects public health or safety or which interferes with the use of public property, Wolcott v. Doremus, 11 Del.Ch. 277, 101 A. 868. In Harlan & Hollingsworth Co. v. Paschall, 5 Del.Ch. 435, where there was no clear proof that a public nuisance would be established as a result of the acts complained of, the Chancellor declined to enjoin the building of a wharf line in Wilmington under authority of an act of the Legislature despite the fact that the method authorized for collecting penalties from persons found guilty under the statute of obstructing the Christiana River was cumbersome and defective. Evidence sufficient to warrant the enjoining of a public nuisance must be clear and convincing, Town of Seaford v. Eastern Shore Public Service Co., 22 Del.Ch. 1, 191 A. 892.
While there is evidence that plaintiffs' investigator,[7] Mrs. DeLellis, experienced eye discomfort as a result of the efforts of both defendants independently to fit her with contact lenses, there is no showing that defendants' activities in such field have in any real sense affected the public health or safety and certainly no showing of interference with public property. Is there, however, any other basis[8] for injunctive relief for plaintiffs against alleged acts of optometry on the part of defendants?
There is no doubt but that optometry has a status which clearly distinguishes it from the trade of an optician. In order to be licensed in Delaware an optometrist must have graduated from a school or college approved by the State Board of Examiners in Optometry. Before being admitted to practice by the State Board, Sec. 2108 of Chapter 21, Title 24, Del.C., an optometrist must also pass examinations in various aspects of optics, optometry and orthoptics as well as general and ocular anatomy, physiology, pathology and hygiene. A would be optician on the other hand is not examined or licensed by a board, and there appears to be no official prerequisite to setting oneself up as an optician other than that of paying for a business license. It is obvious, however, that defendants and opticians generally, although they lack the schooling of optometrists, must undergo training not only for the controversial act of fitting contact lenses but also for the simpler act of grinding and fitting medically prescribed spectacle lenses in order properly to serve the public.
Despite modern statutory recognition of the fact that optometrists perform an important service and bear a heavy public responsibility, plaintiff's right, if any, to the equitable relief sought, must necessarily be derived from the chapter of the Delaware Code regulating optometry. While the privileges and duties of the clergyman, the doctor, and the lawyer have their roots deep in history, those of optometrists are purely statutory, Dvorine v. Castelberg Jewelry Corp., 170 Md. 661, 185 A. 562, Georgia State Board, etc. v. Friedman's Jewelers, 183 Ga. 669, 189 S.E. 238. Whatever may be decided in Delaware as to the common law property right of those in the so-called[9] learned professions, plaintiffs' equitable rights, if any, lie on a narrower *428 basis, namely the provisions of Chapter 21 of Title 24, Del.C. and that chapter contains nothing which authorizes licensed optometrists to apply for injunctive relief against the activities of non-licensed competitors.
While the optometry law sets high standards of professional conduct in addition to fixing rigid requirements for admission to practice including a six months internship, it is the State Board of Examiners, § 2102 (a) which "* * * shall carry out and enforce the provisions * * *" of Chapter 21. There is no language in the chapter which can be construed as conferring enforcement powers on an individual licensed optometrist or on a corporation formed to protect the interests of licensed optometrists. Prior to the passage of the various laws regulating the practice of optometry, which are now codified in chapter 21, the field was open to anyone wishing to take up the occupation. The Legislature in like manner could repeal the present optometry laws. While the improper practice of optometry in a proper case may be shown to affect adversely the public welfare and constitute a public nuisance, proof of which is lacking here, plaintiffs may not have the relief they seek on the basis of a claimed right to have their practice of optometry protected by injunction, there being no element of business franchise in the license granted to optometrists. Compare Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483. In my opinion the Delaware laws regulating the practice of optometry, the first of which was adopted in 1909, were enacted to protect the public against the activities of incompetents. These laws exist not to guard optometrists against unfair competition but rather to regulate a skilled occupation for the benefit of the public through the supervision of a State Board of Examiners in Optometry and criminal sanctions available against unlicensed practitioners, New Hampshire Board of Registration in Optometry v. Scott Jewelry Co., 90 N.H. 368, 9 A.2d 513.
As noted earlier in this opinion, Title 24 of Del.C. regulates seventeen professions and occupations. Thirteen of these[10] chapters have a common pattern. Each provides for a regulatory state board appointed by the Governor. These boards have jurisdiction over callings as diverse as undertaking on the one hand and medicine, surgery and osteopathy on the other and are entrusted with the responsibility of licensing qualified applicants and of revoking or declining to renew licenses. Violations of the chapter provisions are punishable by fines and in some instances by imprisonment. In none of the chapters of Title 24 is there provision for injunctive relief against activities of an unlicensed practitioner on application of the state board or of the licensed practitioner. In my opinion the purpose of Chapter 21 of Title 24 is to protect the public from incompetents in the profession or occupation there regulated and not to provide for the grant of that type of franchise which is entitled to injunctive protection, New Hampshire Board of Registration in Optometry v. Scott Jewelry Co., supra. Indictment and prosecution would appear to be the normal method of proceeding against an unlicensed practitioner, State v. Morrow, 1 Terry 363, 10 A.2d 530, State v. Ghadiali, 6 W.W.Harr. 308, 175 A. 315.
On the basis of the facts adduced by plaintiffs, defendants' motion to dismiss *429 must be granted. The purpose of the Delaware Optometry Law is to afford protection for the public and no showing has been made that defendants' activities in fitting contact lenses in any way constitute a public nuisance. In view of this holding, defendants' other defenses of unclean hands, the nature of the injury or damage suffered by plaintiffs, the alleged control of defendants' activities by physicians, absence of an indispensable party in the case against the defendant, Kuhwald, and whether a prima facie case of statutory violation has been established against such defendant, need not be considered.
Order on notice.
NOTES
[1] The individual plaintiffs are optometrists and the purpose of the corporate plaintiff is to promote the interests of its member optometrists. Defendants are opticians who purport merely to fill the prescriptions of ophthalmologists. These three callings have been recently defined as follows: "An ophthalmologist is a duly licensed physician who specializes in the care of the eyes. An optometrist examines eyes for refractive error, recognizes (but does not treat) diseases of the eye, and fills prescriptions for eyeglasses. The optician is an artisan qualified to grind lenses, fill prescriptions, and fit frames." Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 463, 99 L.Ed. 563.
[2] Title 24 is entitled "Professions and Occupations" and consists of 17 chapters regulating that number of callings.
[3] Sec. 2101(a) (3) includes in the definition of acts of optometry: "The prescribing and application of * * * contact lenses * * *."
[4] Sec. 342 of Title 10 Del.C. provides: "The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State."
[5] In cases where injunctive relief has been granted to plaintiff optometrists there is often a blurring of the actual basis for the relief granted, the courts speaking not only of a professional property right, but also of the element of public nuisance in the commercialized practice of optometry by department stores and other business corporations, Neill v. Chaby, 86 Pa.Dist. & Co.R. 457. In Pennsylvania, the nuisance element has been stressed in suits by members of a variety of professions, Boggs v. Werner, 372 Pa. 312, 94 A.2d 50.
[6] Conversely equity should not interfere by injunction with the enforcement of criminal laws, Economy Cleaners, Inc., v. Green, 21 Del.Ch. 170, 184 A. 225. There is no criminal action pending against defendants under Chapter 21 nor have plaintiffs sought to have such instituted.
[7] Mrs. DeLellis, an employee of the Brandywine Investigative Agency, was hired to undergo contact lens fittings in order to develop proof in support of plaintiffs' case. Defendants were unaware of each other's simultaneous activities in regards to Mrs. DeLellis.
[8] The only Delaware cases which consider the subject of unfair competition have to do with trade marks, trade names and the Fair Trade Law, Chapter 19, Title 6, Del.C. There is no evidence that defendants profess to be licensed optometrists.
[9] Lawyers are generally considered to be entitled to injunctive relief against unauthorized practice of law, however, in the case of Wollitzer v. National Title Guaranty Co., 148 Misc. 529, 266 N.Y.S. 184, affirmed 241 App.Div. 757, 270 N.Y.S. 968, it was held that attorneys in the absence of a showing of special injury or damage have no common law right to ask that illegal practice be enjoined. Apparently by statute alternative remedies including injunctive relief after request of the Attorney General are now available to lawyers against unauthorized practice, In re New York County Lawyers Ass'n, 273 App.Div. 524, 78 N.Y.S. 2d 209, 9 A.L.R.2d 787.
[10] The other four are concerned with the mere licensing of the following occupations: Deadly Weapons Dealers, Detective (Private), Hotels, Restaurants, and Places of Entertainment, and Pawn brokers and Junk Dealers.